Charles A. MICKLE, Libelant,

v.

THE Motor Vessel HENRIETTE WILHELMINE SCHULTE, its engines, etc., Schulte & Bruns, K. G., et al., Respondents.

SCHULTE & BRUNS, K. G., a limited partnership, Petitioner,

v.

CALIFORNIA STEVEDORE & BALLAST CO., a corporation, Respondent Impleaded.

CALIFORNIA STEVEDORE & BALLAST CO., a corporation, Petitioner,

v.

WALLENIUS LINE and Rederi Ab Walltank, Respondents Impleaded.

No. 27923.

United States District Court
N. D. California, S. D.

April 28, 1960.

On Motion to Reconsider Sept. 12, 1960.

Mansfield Davis, Herron & Winn, San Francisco, Cal., for libelant.

Graham James & Rolph, San Francisco, Cal., for Schulte & Bruns, K. G., a limited partnership.

Lillick, Geary, Wheat Adams & Charles, San Francisco, Cal., for impleaded respondents Rederi Ab Walltank & Wallenius Line.

Cooper, White & Cooper, San Francisco, Cal., for impleaded respondent California Stevedore & Ballast Co.

SWEIGERT, District Judge.

Libelant, a longshoreman employed by California Stevedore & Ballast Company, a stevedore company, was injured while working on board a vessel owned by Schulte & Bruns, K. G., and time chartered to Wallenius Line, also known as Rederi Ab Walltank.

Libelant alleges that, while engaged in doing stevedoring work on shipowners' vessel, he stepped upon a hatch cover, defectively supported and in an unsea-

worthy condition, and fell, thereby sustaining certain personal injuries.

A libel in rem was filed against the ship and in personam against Waterman Corporation, for which Wallenius Line has since been substituted as charterer, and against Schulte & Bruns, K. G., the shipowners, as well as against several fictitious persons and corporations.

One count charged each respondent with negligence in failing to inspect the hatch covers used to cover the vessel's hatches to see whether they were properly supported, in failing to provide libelant with a safe place to work, and in failing to warn libelant of an existing danger.

Another count was for breach of the warranty of seaworthiness due to the defective condition. A third count contained allegations similar to those of count one.

The ship and its owners disclaimed liability both for negligence and unseaworthiness, and impleaded the stevedore company, pursuant to Admiralty Rule 56, 28 U.S.C.A., on the theory that, if the ship or its owners are held liable, such liability will have been occasioned by the failure of the stevedore company to perform in a workmanlike manner. While the shipowners are not in privity of contract with the stevedore company, they, nevertheless, claim the benefit of the implied warranty of workmanlike service contained in the contract between stevedore company and charterer. Specifically, they allege that in removing the false decking the stevedore company carelessly caused one or more of the hatch boards to be deprived of support, thereby causing libelant's injuries.

The shipowners have also impleaded the time charterer upon the theory that, if the shipowners are liable to the libelant, such liability would arise solely because the charterer had breached a provision of the charter agreement that charterer would erect, install, and dismantle such false decking in a safe and proper manner. Meanwhile, the libelant has also joined the time charterer as a respondent.

By its pending motion, the stevedore company also seeks to implead the charterer upon the theory that the ship was in control of the charterer; that the stevedore company boarded the vessel pursuant to an agreement with the charterer to perform stevedoring services; that the charterer had built false decking, of which the unsupported hatch was a part, and had installed it improperly and unsafely; consequently, that the charterer had failed to furnish a safe and suitable vessel on which the stevedore company was to perform its services.

The charterer has excepted to being thus impleaded by the stevedore company. It argues that, if the stevedore company be found to have negligently performed its contract with the charterer and, therefore, is liable to indemnify the shipowners for the shipowners' liability to libelant, the stevedore company should not then be allowed to seek indemnity from the charterer for its own negligence; further, that no express indemnity agreement or warranty, running from the charterer to the stevedore company, is alleged upon which the stevedore company may rely.

 In considering charterer's exception, we first notice that should the ship be found unseaworthy, its owners will be held liable for breach of the warranty of seaworthiness, even though they were not in control of the vessel, since the duty to provide a seaworthy vessel is nondelegable. Seas Shipping Co. v. Sieracki, 1946, 328 U.S. 85, 66 S.Ct. 872, 90 L.Ed. 1099.

But, if the unseaworthy condition were brought into play by the negligence of the stevedore company, the shipowner would be entitled to indemnity from the stevedore company for breach of the warranty of workmanlike service implied in its contract with the charterer, which inures to the benefit of the ship. Ryan Stevedoring Company v. Pan-Atlantic S. S. Corp., 1956, 350 U.S. 124, 76 S.Ct. 232, 100 L.Ed. 133; Crumady v. The Joachim Hendrik Fisser, 1959, 358 U.S. 423, 79 S.Ct. 445, 3 L.Ed.2d 413.

80

Should the stevedore company be found negligent, and the charterer not found negligent, the stevedore company would obviously not be entitled to indemnity from the charterer. Should, however, the charterer be found negligent, the libelant would have its recovery directly against it as a respondent.

Should both the stevedore company and the charterer be found negligent, the stevedore company could not recover contribution from the charterer, because in admiralty there is no contribution between joint-tortfeasors in non-collision cases. Halcyon Lines v. Haenn Ship Corp., 1952, 342 U.S. 282, 72 S.Ct. 277, 96 L.Ed. 318. Indemnity between parties involved in negligent conduct is allowed in admiralty only upon a contract theory of warranty, either express or implied. Ryan Stevedoring Company v. Pan-Atlantic S.S. Corp., supra. This is the rule, notwithstanding possible distinctions as to the degree of negligence, whether "active" or "passive", whether "primary" or "secondary." Weyerhaeuser S.S. Co. v. Nacirema Co., 1958, 355 U.S. 563, 78 S.Ct. 438, 2 L.Ed.2d 491.

Accordingly, stevedore company asserts that it is not claiming a right of contribution, but is seeking indemnity upon a warranty implied in the contract between it and the charterer to the effect that the latter would provide a safe and suitable place to work.

■ Such a warranty is, of course, implied from the maritime duty to provide a seaworthy vessel imposed upon a ship and its owners in favor of members of the ship's crew, and in favor of others, including longshoremen, who are in the ship's service, Seas Shipping Co. v. Sieracki, supra. But, such warranty of seaworthiness has not been applied to a stevedore company, as distinguished from a longshoreman. Hugev v. Dampskisaktieselskabet International, D.C.S. D.Cal.1959, 170 F.Supp. 601. Nor has such obligation been imposed upon a time charterer, such as we have here, as distinguished from a demise charterer. Cannella v. United States, 2 Cir., 1950, 179 F.2d 491; Gilmore & Black, The Law of Admiralty, 218 (1957).

If no such implied warranty of seaworthiness runs from the charterer to the stevedore company in this case, it remains only to determine whether any other warranty, express or implied, arises in favor of stevedore company from the contractual relationship between it and the charterer.

■ No express warranty has, however, been alleged in stevedore company's petition of impleader, for which reason we consider only whether any implied warranty arises thus to permit stevedore company to hold charterer for breach of a contractual responsibility to provide a safe and suitable place for it to work.

■ It is, of course, true that an occupier of a premises, including a charterer in possession of a vessel, owes certain duties of care to a business invitee, especially to an independent contractor, such as a stevedore company, which comes onto the premises to perform services, 2 Harper & James, The Law of Torts, Section 27.12 (1956), including the duty not to cause injury by negligent activity, 2 Restatement of Torts, Section 341; the duty to warn of latent perils actually known to the occupier, Prosser on Torts, 453 (1955); and the duty to inspect the premises to discover dangerous conditions. 2 Restatement of Torts, Section 343. See, generally, Prosser, supra, 452–62.

Such duty, however, is not a contractual obligation. It can only become such when made the subject of an express warranty. The duty arises, not from the law of contract, but from the law of tort. It rests upon the general obligation of persons to use ordinary care, and is violated only by negligent conduct, quite distinguishable from an unqualified contractual warranty of safety.

■ The allegation of the stevedore company that the charterer was "obliged" to provide it with a safe place to work is, therefore, merely a conclusion of law, unsupported by the factual allegations of the petition of impleader.

To say that the service contract between the charterer and the stevedore company, pursuant to which the latter boarded the vessel, gave rise to an implied warranty on the part of the charterer to observe its general obligation to exercise due care is to confuse tort law with contract law. An implication of a promise to observe the law of torts is unnecessary and meaningless. 17 C.J.S. Contracts, § 22. No such promise can be implied, and as previously noted, no express warranty is alleged. For these reasons, we conclude that the charterer's exception to the impleader should be sustained.

As the prevailing party, charterer will prepare an order in accordance with this opinion within five days from the date of this filing for the Court's approval, as provided by the rules of this Court.

#### On Motion to Reconsider.

This is a motion to reconsider an order, dated May 4, 1960, granting the exception of Wallenius Lines, hereinafter called the charterer, to the petition of impleader, filed by California Stevedore & Ballast Co., hereinafter called the stevedore.

Such order was made on the basis of a memorandum filed April 28, 1960, which considered the question whether, absent an express warranty in a service contract between stevedore and charterer, an implied warranty could be found, imposing upon charterer in favor of stevedore a contract obligation to furnish a safe and suitable place to work.

It was the opinion of this Court that no such warranty could be implied in the contract between the stevedore and the charterer, inasmuch as it would constitute a "promise" merely to observe the duty already imposed by the law of torts on occupiers of premises to exercise reasonable care toward business invitees coming onto the premises to perform services. Prosser On Torts, 452–62 (2nd ed. 1955).

It was there pointed out that the implication of a promise to observe a duty already imposed by law was meaningless,

17 C.J.S. Contracts § 22, and that the singular basis of recovery for which charterer may ultimately be considered liable to stevedore rests in tort for negligence.

The Court recognizes that this conclusion works an anomalous and harsh result for the reason appearing in stevedore's petition of impleader, i. e., that the charterer allegedly had installed the false decking upon the vessel, including the unsupported hatch through which the libelant-longshoreman, stevedore's employee, fell, sustaining the injuries which are the subject matter of this litigation.

As stevedore points out, certain facts may develop at the trial which may indicate stevedore's breach of duty to inspect and discover the defective condition, for which stevedore may be held liable to the ship and its owners as third party beneficiaries of stevedore's implied warranty to charterer to perform in a workmanlike manner. Cf. Crumady v. The Joachim Hendrik Fisser, 1959, 358 U.S. 423, 79 S.Ct. 445, 3 L.Ed.2d 413.

If so, it may further be determined at the trial that its breach of duty, if any, was only "passive" or "secondary" to the "active" or "primary" negligence of charterer, which owned and installed the false decking in an allegedly improper manner.

Yet, we feel constrained to follow the maritime rule which is clearly to the effect that no right of contribution exists as between joint-tortfeasors in non-collision cases. Halcyon Lines v. Haenn Ship Co., 1952, 342 U.S. 282, 72 S.Ct. 277, 96 L.Ed. 318.

The rule in Halcyon properly applies as well to bar the application in admiralty of common law principles of tort indemnity which allow full recovery by one joint-tortfeasor from another joint-tortfeasor where both have breached a duty of care owed to an injured person in a situation where the duties owed were disproportionate and that of the indemnitee the more exacting.

Such implication follows from the Halcyon opinion itself, where in 342 U.S. at pages 283–284, 72 S.Ct. 277, the Court noted that it granted certiorari to resolve the conflicting views taken by the circuits, citing American Mutual Liability Ins. Co. v. Matthews, 2 Cir., 1950, 182 F.2d 322, a case clearly involving the right of contribution between joint-tortfeasors, and United States v. Rothschild International Stevedoring Co., 9 Cir., 1951, 183 F.2d 181, a case clearly involving the tort principle of indemnity. The Supreme Court did not differentiate between noncontractual contribution and noncontractual indemnity in its opinion, and it would seem that the indemnity principle, which has been described by Judge Learned Hand merely as "an extreme form of contribution," Slattery v. Marra Bros., Inc., 2 Cir., 1951, 186 F.2d 134, 138, would be embraced within the Halcyon rule, since otherwise a joint-tortfeasor barred under the contribution theory from recovering one-half his loss in contribution, could recoup under the tort indemnity theory *all* his loss.

■ Moreover, we believe that recovery on a tort indemnity theory, based upon a possible inequality of tortious fault, or a disproportionate measurement of tort duty owed would, in any case, be precluded in this situation by the operation of the Longshoremen's and Harbor Workers' Compensation Act, 33 U.S.C.A. § 901 et seq.

This statute has relieved an employer, such as stevedore here, from any liability for negligence which otherwise he might have for the injuries of his employee. If, therefore, the stevedore no longer owes any enforceable duty of due care to the employee, no recovery may be had against him on a negligence theory. His liability, if any, must be predicated upon the breach of a duty independently owed to some party other than his injured employee.

Any consideration of the employer-stevedore's negligence, therefore, is relevant only to the extent it may bear upon the analysis of such an independent duty, which here, and in most cases, derives from contract, and is owed, in most cases to the shipowner, but here to the charterer and to the shipowner only as third party beneficiary, who employs the stevedore to come onto the vessel and perform his service.

If then the stevedore cannot be considered a tortfeasor, then even in the absence of Halcyon he would be barred from seeking contribution or a tort indemnity because those tort theories apply only to those who are responsible in tort for their negligence.

Those cases which stevedore here cites in support of a tort indemnity right, predate Halcyon and fail to consider the effect of the Longhoremen's and Harbor Workers' Act. They generally reflect the former and now discarded rule, once prevailing in the lower federal courts, that a right of contribution and of indemnity existed in the law of admiralty. See, generally, 2, Benedict on Admiralty, Section 353.

While recent and significant authority now exists recognizing a right to indemnity, different and distinct from the right of contribution, it has so far depended for its recognition upon the presence of a contract, either express or implied. Ryan Stevedoring Co. Inc. v. Pan Atlantic S.S. Corp., 1955, 349 U.S. 901, 75 S.Ct. 575, 99 L.Ed. 1239; American President Lines, Inc. v. Marine Terminals Corp., 9 Cir., 1956, 234 F.2d 753. Because of its dependence upon contract notions, the several qualities of fault, such as "active" or "passive", "primary" or "secondary" are considered irrelevant factors in any determination of a contractual right of indemnity. Weyerhaeuser S.S. Co. v. Nacirema Co., 1958, 355 U.S. 563, 78 S.Ct. 438, 2 L.Ed.2d 491.[1]

---

1. It may be pointed out that the result in Halcyon was no more harsh than that which may result here. There, the shipowner, found by the jury to be 25% negligent, ended by paying the full damages, while the stevedore, found by the jury to be 75% negligent, paid nothing.

The inequity of stevedore's present situation, if any, is, therefore, irremediable upon any tort notion, either of contribution or indemnity, and irremediable also upon any contract notion of warranty or indemnity, as discussed in our former order.

 For purposes of this motion to reconsider, stevedore has also sought the benefit of a warranty of fitness by classifying the charterer as a supplier of a defective chattel.

The warranty of fitness, the benefit of which stevedore seeks to obtain, is that traditionally implied only by the law of sales, Prosser on Torts 493, but which has to some extent been extended beyond sales, 2 Harper & James, The Law of Torts, Section 28.19 (1956), Prosser 496.

Such a classification of the charterer may not benefit stevedore in the maritime field, because any claimed warranty of fitness imposed upon a shipowner or charterer by the law of admiralty in favor of those who perform a ship's service is merely one and the same thing as the warranty of seaworthiness, itself a tort obligation.

Originally intended to run in favor of the shipper of cargo, The Caledonia, 1895, 157 U.S. 124, 15 S.Ct. 537, 39 L.Ed. 644, and the ship's crew, The Osceola, 1903, 189 U.S. 158, 23 S.Ct. 483, 47 L.Ed. 760, more recent developments in the maritime field have extended the warranty's scope to include others in the "ship's service," notably longshoremen, Seas Shipping Co. v. Sieracki, 1946, 328 U.S. 85, 66 S.Ct. 872, 90 L.Ed. 1099.

The obligation to furnish a seaworthy vessel does not, however, run in favor of the stevedore company, the longshoreman's employer, Hugev v. Dampskisaktieselskabet International, D.C.S.D.Cal. 1959, 170 F.Supp. 601, nor has it been imposed upon a time charterer, as distinguished from a demise charterer. Cannella v. United States, 2 Cir., 1950, 179 F.2d 491.

Because no noncontractual warranty of fitness may be recognized in this situation, extending from charterer to stevedore—an implied legal duty to supply a ship fit for the performance of stevedore's service—and because no noncontractual right of contribution or indemnity is applicable, nor is any contractual warranty or indemnity, express or implied, we must deny stevedore's motion to reconsider.

It is so ordered.