NORDEUTSHER LLOYD, BRENNAN, aka North German Lloyd, a corporation, Libelant,

v.

BRADY–HAMILTON STEVEDORE CO., a corporation, Respondent.

Civ. No. 60–272.

United States District Court
D. Oregon.

April 28, 1961.

Lofton L. Tatum, Wood, Wood, Tatum, Mosser & Brooke, Portland, Or., for plaintiff.

Nathan J. Heath, Gray, Fredrickson & Heath, Portland, Or., for defendant.

KILKENNY, District Judge.

Libelant, a German corporation, owns and operates ocean-going steamships, including the vessel M.S. Bodenstein. As owner and operator of said vessel, libelant contracted with respondent, an Oregon corporation, engaged in business as a master stevedore in Portland, Oregon, to do certain work as a stevedore on said vessel while she was on navigable waters in the Willamette River in September, 1957. Respondent, as master stevedore, unloaded certain cargo from said vessel and in so doing employed one Ough as a longshoreman. During the course of said stevedoring operations and while respondent was discharging heavy crates of glass from said vessel, one of said crates fell on Ough, as a result of which he received substantial personal injuries. These crates of glass were stowed on top of a cargo of bundles of pipe. To unload the glass, the longshoremen built a platform over the pipe to facilitate the use of a lift truck. To lift the crates into position where the lift truck could be operated, a team of two men, one of whom was Ough, used a two-wheeled hand dolly. One man would lift one end of the crate with the dolly while the other would in-

sert a block of wood under the crate. In the performance of this operation the crate of glass fell on Ough. He filed an action against the owners of the vessel claiming that the vessel was unseaworthy and the owners negligent in certain particulars.[1] Prior to the trial libelant gave formal notice to respondent to defend said action and to assume responsibility therefor. The formal sufficiency of the notice is not in dispute. Respondent refused to assume responsibility or accept the defense of the case. The action proceeded to trial in this Court. A jury returned a verdict in favor of Ough and against libelant for the sum of $65,000. A judgment was duly entered on said verdict for said sum and costs, and on July 1, 1960 libelant satisfied said judgment by the payment of $65,568.77, for which sum and interest thereon libelant prosecutes this action. The parties agreed that I should consider all of the evidence in that trial, in addition to the evidence in this case.

Libelant charges respondent with breach of its stevedoring contract at the time and place of the injury in question in failing to discharge the cargo in a safe and proper manner and in negligently performing the contract for discharging the vessel in the following particulars:

"(a) It utilized an unsafe method of discharge under the conditions known to the respondent to exist at the time and place of said unloading in that respondent removed the stripping which held the crates of glass in position, failed to lash the crates together to prevent falling while unloading, failed to use a hook or other device to secure the crates while unloading, failed to prop or hold the crates while unloading, and failed to place the lift truck next to the crates to prevent injury if the crates fell while unloading.

"(b) Failed to stop all discharging operations as soon as respondent realized or should have realized it was unsafe to continue to discharge.

"(c) Failed to take the steps necessary to insure safe unloading of said cargo after respondent knew of the situation existing at that time and place.

"(d) Failed to accomplish the unloading in such a manner so as to prevent the vessel from becoming unseaworthy, to-wit: failed to secure the crate so as to prevent it from falling and jacked the crate up so as to permit it to fall.

"(e) Created a hazardous condition by unsecuring the glass crates without taking any precaution to see that said crates were prevented from falling while being unloaded.

"(f) Failed to take measures available to cure any allegedly defective condition of the stow as alleged in the complaint herein, libelant's Exhibit 1."

In addition, libelant charges that *if* the vessel was unseaworthy on her arrival at Portland because of improper and unsafe stowage of crates of glass, respondent was fully aware of the condition and stowage of the cargo and willingly proceeded with the work of unloading said cargo, despite such knowledge.

Libelant claims that the discharge of the cargo and the manner in which the

---

1. "1. The vessel was unseaworthy in that the crates were stacked on pipes of varying sizes which caused the cargo to slip, slide and roll and otherwise be insecure.

"2. Libelant was negligent in failing to furnish sufficient and satisfactory footing upon which to set cargo.

"3. Libelant was negligent in stacking said cargo upon pipes of various sizes so as to create the hazards attendant in discharging said cargo.

"4. Libelant was negligent in failing to leave space between the pipes and the crates of glass by means of stickers or otherwise so that the same could be removed or discharged without the necessity of jacking up or raising up the crates off the pipes.

"5. The vessel was unseaworthy and libelant was negligent in that no floor had been laid between the pipes and the crates at the time of said storage of said cargo."

work was accomplished was entirely within the control of the respondent and that as a result of the breach and negligent performance of duty the libelant was damaged in the sum of $65,568.77, the amount paid on the judgment, $2,500 as reasonable attorney fees in this proceeding, and $484.53 as costs and expenses incurred in the defense of the aforementioned action.

The nature of the obligation between the libelant and the respondent is not a quasi-contractual one which is implied in law or one arising out of a noncontractual relationship. Such obligation is of the essence of the stevedoring contract. It is the respondent's warranty of workmanlike service which is comparable to a manufacturer's warranty on the soundness of a manufactured product. Ryan Stevedoring Co. v. Pan-Atlantic S. S. Corp., 350 U.S. 124, 76 S.Ct. 232, 100 L.Ed. 133.

The respondent's duty under its contract with the libelant included the duty to suspend the loading or unloading operation of its own initiative and thus avoid injury or damage whenever it realized that it would be unsafe to proceed. United States v. Arrow Stevedoring Co., 9 Cir., 1949, 175 F.2d 329, certiorari denied 338 U.S. 904, 70 S.Ct. 307, 94 L.Ed. 557. The warranty of seaworthiness raised in favor of the shipper of cargo and extended to seamen and longshoremen, Seas Shipping Co. v. Sieracki, 1946, 328 U.S. 85, 66 S.Ct. 872, 90 L.Ed. 1099, does not extend to the stevedoring contractor. Crumady v. The Joachim Hendrik Fisser, 1959, 358 U.S. 423, 79 S.Ct. 445, 3 L.Ed.2d 413. It is said that such a contractor represents himself to be, and is assumed to be, expert and experienced in the work of loading and unloading cargo, while the individual longshoreman may or may not be so qualified. Hugev v. Dampskisaktieselskabet, D.C.S.D.Cal.1959, 170 F.Supp. 601. While the shipowner's liability to the individual longshoreman may be predicated upon principles of tort liability, the authorities hold that the shipowner's right to indemnity is nothing more or less than a right

to recover damages for breach of the stevedoring contract by the stevedoring company of an implied-in-fact obligation. Weyerhaeuser S. S. Co. v. Nacirema Operating Co., 355 U.S. 563, 567, 78 S.Ct. 438, 2 L.Ed.2d 491; Ryan Stevedoring Co. v. Pan-Atlantic S. S. Corp., supra.

There is a definite duty on the part of the stevedore to call to the attention of the ship's officers all unseaworthy conditions and to stop all operations when it appears that to proceed would be unsafe. Revel v. American Export Lines, E.D.Va.1958, 162 F.Supp. 279, 281, affirmed American Export Lines v. Revel, 4 Cir., 266 F.2d 82; United States v. Arrow Stevedoring Co., supra. A longshoreman, when performing the "ship's service," is entitled to the same protection against unseaworthiness which members of the crew doing the same work would receive. Seas Shipping Co. v. Sieracki, supra. The work of loading and unloading is historically the work of the ship's service. Seas Shipping Co. v. Sieracki, supra.

The evidence is clear that the stowage of the crates of glass on the bundles of pipe was improper, that respondent had notice of the dangerous place in which Ough and his fellow workman were compelled to work and that nothing worthwhile was done to protect the men from the hazards of unloading this dangerous cargo.

Mowrey, respondent's hatch boss, testified that this was one of the worst stows of glass he had ever seen. It was so bad he reported it to the walking boss, the head employee of respondent, and told him that the stowage was an awful mess. The walking boss agreed and told the hatch boss to do what he could with it. This testimony was in the original trial. I was not impressed at the trial in this case with the attempt to explain away the meaning of the very forthright testimony in the original trial.

On an examination of all of the evidence in this cause, observed in light of the foregoing authorities, I find substantial evidence that respondent breached

its stevedoring contract with libelant in failing to discharge said cargo in a safe and proper manner and in negligently performing such contract in each of the particulars as charged by libelant.

■ I further find that the discharge of the cargo and the manner in which the discharge was handled were entirely within the control of respondents. There is no evidence that the libelant breached or failed to perform any duty which it owes to respondent.

■ The foregoing findings are dispositive of the issue of liability. However, in view of the probability of appeal, I should express my views on the question of the conclusiveness of the verdict of this jury and the judgment entered thereon on the issues in this case.

Libelant contends that respondent, having received notice of the pendency of the original action and an opportunity to defend and having refused to participate in such defense, is bound by the determination of all facts in the first action which were material to a recovery against the defendant in that action (libelant here) including the liability of the defendant in the first action and the amount of damages sustained.

■ There are cases where a determination of the claim against the indemnitee will establish a right to recovery, as a matter of law, against the indemnitor. Where the indemnitor, with notice of the action and a request to defend, does not participate in the defense, but leaves it to the efforts of the indemnitee, and where the facts in the case would demonstrate liability on the indemnitor, then, in subsequent litigation between the parties, the findings necessary to the judgment in the original case are binding on all concerned. Washington Gas Light Co. v. District of Columbia, 161 U.S. 316, 16 S.Ct. 564, 40 L.Ed. 712. That case clearly illustrates the background on which the indemnitor is bound by the findings in the original action. This rule has been followed in the Ninth Circuit. Booth-Kelly Lumber Co. v. Southern Pacific Co., 9 Cir., 1950, 183 F.2d 902, 20 A.L.R.2d 695; Farmland Irrigation Co. v. Dopplmaier, 9 Cir., 1955, 220 F.2d 247. Since we are governed by the rules of maritime law, we are not concerned with the Oregon law on the subject. However, the Supreme Court of that state follows the rule above mentioned. City of Astoria v. Astoria C. R. R. Co., 67 Or. 538, 550, 136 P. 645, 649, 49 L.R.A., N.S., 404. The scope of the estoppel created by the judgment in the primary case embraces all of the issues necessarily determined by it. Booth-Kelly Lumber Co. v. Southern Pacific Co., supra.

■ On the other hand, if the primary claim against the indemnitee is premised on a charge on which the indemnitor would be liable, and also on a separate charge on which the indemnitee was liable, the judgment based on both claims would not, as a matter of law, be conclusive against the indemnitor. In other words, it is only those facts necessarily litigated and determined against indemnitor in the former suit which would be binding on it in subsequent litigation. Security Insurance Co. of New Haven v. Johnson, 10 Cir., 1960, 276 F.2d 182, 188, 189; Crawford v. Pope & Talbot, Inc., 3 Cir., 1953, 206 F.2d 784, 795.

■ In making a determination as to what facts were necessarily determined by the verdict of the jury in the primary case, the Court, on litigation between the indemnitor and the indemnitee, should look to the entire record, including the pleadings, the evidence, the instructions, the verdict and the judgment. Washington Gas Light Co. v. District of Columbia, supra.

Respondent argues that the judgment in the primary case is not conclusive, in that the specifications of unseaworthiness and negligence in such case related solely to the manner in which the vessel was loaded and that the respondent, as the contracting stevedore, could not be held responsible for those charges. I have already found that respondent was

fully aware of the dangerous place in which Ough was required to work. Respondent breached its duty whenever its action brought into play the unseaworthiness of the vessel. Waterman S. S. Corp. v. Dugan & McNamara, Inc., 364 U.S. 421, 81 S.Ct. 200, 5 L.Ed.2d 169; Crumady v. The Joachim Hendrik Fisser, supra.

 I have examined each specification of unseaworthiness and negligence which was submitted to the jury in the primary case.[2] After scrutinizing the entire record in that case, I am of the opinion, and I find, that respondent, if it had been a party to the primary case, would be responsible on each specification. Of course, I realize that respondent, by reason of the Longshoremen's and Harbor Workers' Compensation Act, 33 U.S.C.A. §§ 901 to 950, could not be joined as a party by libelant. However, if it could be joined, it could not escape liability on any one of the specifications charged in the primary action, under the doctrine as taught in Ryan, Crumady and Waterman. In view of my findings, the decisions in Washington Gas Light Co. v. District of Columbia, supra, Farmland Irrigation Co. v. Dopplmaier, supra, and Booth-Kelly Lumber Co. v. Southern Pacific Co., supra, are applicable, and the judgment in the primary case is conclusive against respondent, not only as to liability, but also as to the amount of the judgment. Chicago, R. I. & P. R. Co. v. Dobry Flour Mills, 10 Cir., 1954, 211 F.2d 785; United States Fidelity & Guaranty Co. v. Dawson Produce Co., 180 Okl. 119, 68 P.2d 105.

Libelant is entitled to recover the full amount paid on the original judgment, together with interest from the date of payment, a reasonable attorney fee, and the reasonable cost of the defense of the primary case. If counsel do not agree, a hearing will be held on such attorney fees and costs.

Counsel for the libelant shall prepare, serve and present appropriate findings and judgment.

2. See Footnote 1.