MATTER OF LUGO-GUADIANA

In Deportation Proceedings

A-12990025

*Decided by Board May 16, 1968*

(1) Where alienage is in issue in a deportation proceeding, there must be an evaluation of all the evidence and a finding with regard to its credibility before the clear, convincing and unequivocal burden of proof test, as set forth in *Woodby v. Immigration and Naturalization Service*, 385 U.S. 276, comes into play.

(2) An official, contemporaneous record of respondent's birth in Mexico, supported by his prior admissions of birth in that country, satisfies the clear, convincing and unequivocal test of *Woodby, supra,* in establishing alienage, where the testimony of respondent's witnesses as to his birth in the United States, supported by a delayed birth certificate has been found lacking in credibility.

CHARGE:

Order: Act of 1952—Section 241(a)(2) [8 U.S.C. 1251(a)(2)]—Entered without inspection.

| ON BEHALF OF RESPONDENT: | ON BEHALF OF SERVICE: |
|---|---|
| Filemon B. Vela, Esquire | Irving A. Appleman |
| 1144–1146 E. Madison Street | Appellate Trail Attorney |
| Brownsville, Texas 78520 | Bernabe Q. Maldonado |
| | Trial Attorney |
| | (Brief filed) |

An order to show cause, issued on March 1, 1967, charges that the above-captioned respondent is a native and citizen of Mexico who last entered as a citizen of the United States at the port of Brownsville, Texas, on or about February 26, 1967, upon presentation of a delayed birth certificate showing birth in La Paloma, Texas, on July 17, 1944. It also alleges that the respondent falsely claimed to have been born in the United States and was not then inspected and admitted by an immigration officer as an alien. The special inquiry officer in an order entered on November 20, 1967 terminates the deportation proceeding upon a finding that alienage has not been established by clear, unequivocal and convincing evidence. The trial attorney appeals from this order.

726

It is conceded that the respondent last entered the United States at the port of Brownsville, Texas on or about February 26, 1967; that he was admitted as a citizen of the United States upon presentation of a delayed birth certificate showing birth in La Paloma, Texas on July 17, 1944. It is also conceded that the respondent was not inspected as an alien. The only issue presented by the case is whether the Immigration Service has established deportability by clear, unequivocal and convincing evidence that the facts alleged as grounds for deportation are true (8 CFR 242.14(a)).

The respondent's father, his mother and two aunts testified that the respondent was born on the La Paloma ranch near San Benito, Texas during the early morning hours of July 17, 1944. The respondent's father testified that he and his expectant wife were visiting his grandfather who was seriously ill; that they were admitted by the immigration authorities at Brownsville, Texas on July 16, 1944; that his wife became ill soon after their arrival at the ranch and that their first child was born at the ranch on the morning of July 17, 1944. The respondent's aunt, Diogracia, testified that she assisted in the delivery, and her testimony was corroborated by the testimony of the respondent's father, his mother and another aunt who was present in the home at the time of the alleged birth.

The Immigration Service introduced in evidence a Mexican birth certificate (Ex. 3) showing that the respondent's father, Jesus Lugo, appeared on July 29, 1944 before an official of the civil registry, in Matamoros, Tamaulipas, Mexico to report the birth of the respondent at 11 p.m. on July 17, 1944 in Matamoros, Mexico. The evidence establishes the respondent's parents were then living in Ejido La Puerta, within the jurisdiction of the municipality of Matamoros, Tamaulipas, Mexico.

The respondent, assisted by his father, applied for a nonresident alien's Mexican border crossing card (Ex. 2) at Brownsville, Texas in 1958. He submitted in support of his application a Mexican Form 13, a document issued by the Mexican Servicio de Poblacion, as a travel document in lieu of a passport. The Mexican document was issued by the Mexican Government on the basis of the respondent's Mexican birth record (Ex. 3; pp. 10 and 11).

The respondent was accorded a hearing in deportation proceedings at San Francisco, California, on October 12, 1962 (Ex. 8). He had entered the United States as a citizen on February 21, 1962 upon presentation of a baptismal certificate showing birth in the United States (Ex. 4). During the deportation hearing, he admitted birth

in Mexico and justified his false claim to United States citizenship with the following testimony:

Q. When you were apprehended by immigration officers, did you tell them that you were born in the United States, or did you tell them that you were born in Mexico, when they questioned you?

A. Well, you know how it is. When you need work, you'll do just anything; so I told them I was born here (United States).

The respondent was deported to Mexico on October 27, 1963. He applied for permission to reapply for admission into the United States after deportation on December 5, 1963 (Ex. 9). He stated in his application that he was born at Matamoros, Tamaulipas, Mexico on July 17, 1944; that he was assisted by a notary public with the application and that he voluntarily told the notary public that he was born in Mexico (p. 98). The application for permission to reapply was denied.

The respondent appeared at the port of Del Rio, Texas on October 17, 1965 and sought admission into the United States as a citizen. When questioned by an immigration officer he admitted that he was born in Mexico on July 17, 1944. He was questioned as to how he obtained the delayed birth certificate that he presented when he applied for admission. He replied:

I took my fe de baptismo to a notary public there in Brownsville, Texas and he filled out a blank form and asked me to take it to my godmother Diogracia Garcia that lives in Harlingen, Texas and she signed it as a witness to my birth and stated that she was the one who delivered me, then I took it to my father and my mother and they signed it. After that I took it back to the notary public and he sent it to Austin, Texas * * *.

Q. Why did you arrange false documents to show that you was born in the U.S.?

A. I had a great need to work because I am the one who supports my family. I only wanted and I did not have any intentions of doing any harm to anyone.

Q. The you swear that you was born in El Ejido de la Puerta Ranch near Matamoros, Tamps., Mexico and that your birth is registered in the civil registry office there?

A. Yes Sir that is true. (p. 2 of Ex. 10)

The issue presented by the evidence before us is whether an official certified record of the respondent's birth in Mexico (Ex. 3) supported by his admissions of birth in that country prior to this proceeding is rebutted by the parol evidence of the respondent's parents and two aunts that the respondent was born in the United States. The parol evidence of birth in the United States is supported by a delayed birth certificates (Ex. 6) issued some 20 years after the claimed date of birth and a baptismal record issued on November 1, 1965.

The same weight does not attach to a delayed birth certificate, such as the one before us, as would attach to one contemporaneous with the actual birth, *Liakakos* v. *Kennedy*, 195 F. Supp. 630, 632 (U.S.D.C. for D.C., 1961). A delayed certificate is merely prima facie evidence and may be rebutted whereas a contemporaneous birth certificate may be said to be almost conclusive evidence of the facts stated therein (*Ibid* at p. 631).

If the documentary evidence submitted by both the respondent and the Immigration Service stood alone, there would be no question as to which should be given more weight. We are confronted, however, with the testimony of the respondent's parents and aunts which corroborate the facts set forth in the delayed birth certificate. They are competent as witnesses by reason of the relationship. The "competency" and "credibility" of a witness are not synonymous terms. One may be a competent witness and yet not credible *State* v. *Beal*, 154 S.E. 604, 617, 199 N.C. 278.

A determination of whether there is clear, unequivocal and convincing evidence that the respondent is an alien resolves itself into a determination of whether the testimony of the respondent's witnesses is worthy of belief. Credibility involves more than demeanor. It apprehends the overall evaluation of testimony in light of its rationality or internal consistency and the manner in which it hangs together with other evidence. *Carbo* v. *United States*, 314 F.2d 718, 749 (C.A. 9, 1963).

The special inquiry officer is of the opinion that the testimony of the respondent's witnesses should be given "considerable weight" notwithstanding the fact that "the preponderance of documentary evidence favors the Government's case . . ." He concedes that the witnesses for the respondent and the respondent "gave testimony not entirely consistent" but concludes that their testimony has not been "discredited or that the minor discrepancies made the testimony unworthy of belief" (p. 3, special inquiry officer's opinion).

An overall evaluation of the respondent's testimony, the testimony of his parents and the testimony of his aunts pursuant to the guidelines set forth above leads us to an opposite conclusion. There is no rationality or consistency in the respondent's prior testimony under oath in 1958, 1962, 1963 and 1965 that he was born in Mexico when evaluated with his testimony in this proceeding. The testimony of the respondent's parents with regard to the circumstances surrounding the respondent's birth at his great grandfather's home in the United States on July 17, 1944 is not consistent with their testimony concerning the registration of his birth in Mexico some 12 days later on July 29, 1944.

The testimony of the respondent's aunts does not "hang together" with the other evidence. One of them testified that her grandfather died in 1950 (p. 59) whereas her brother, the respondent's father, testified that the grandfather died "one or two months" after the respondent was born on July 17, 1944 (p. 37). The delayed certificate of birth in the United States is entitled to little weight in light of the respondent's testimony concerning the evidence he submitted in support of its issue. The fact that the respondent's witnesses are not disinterested parties is a factor to be considered in evaluating their testimony.

We are mindful of the fact that United States citizenship is a privilege which should be guarded zealously. A claim to birth in the United States for the offspring of Mexican parents who reside close to the international border [1] is not uncommon. Where alienage is charged in such a case and the Government has introduced both documentary and parol evidence in support of the charge and the opposing side has introduced evidence intended to rebut the Government's case there must be an evaluation and a weighing of all the evidence and a finding made with regard to its credibility before the test for burden of proof as set forth in *Woodby* v. *Immigration and Naturalization Service* [2] (385 U.S. 276) comes into play. Upon evaluating and weighing the evidence submitted by both the Government and the respondent, we find that the evidence introduced by the Government is more credible than that introduced by the respondent. Based on this finding, we conclude that there is clear, unequivocal and convincing evidence that the facts alleged as grounds for deportation are true. The order entered by the special inquiry officer will be reversed.

ORDER: It is directed that the order entered by the special inquiry officer terminating the above-captioned proceedings be and the same is withdrawn and the following order in lieu thereof is hereby entered: It is directed that the respondent be deported to Mexico on the charge stated in the order to show cause.

---

[1] The residence of the respondent's parents in Mexico is only 35 miles from the place of his alleged birth in the United States.

[2] The Supreme Court held that the test for burden of proof in a deportation proceeding is as follows: "No deportation order may be entered unless it is found by clear, unequivocal and convincing evidence that the facts alleged as grounds for deportation are true."