**WEEKS STEVEDORING CO., INC.,**
Plaintiff,

v.

**ALEXANDRA NAVIGATION CORP.,
LTD., PANAMA, Defendant.**

**Civ. 3561.**

United States District Court,
S. D. New York.

Feb. 2, 1973.

Charles Miller, New York City, for plaintiff; William P. Larsen, New York City, of counsel.

Healy & Baillie, New York City, for defendant; Nicholas J. Healy, Jr., New York City, of counsel.

## OPINION, FINDINGS OF FACT and CONCLUSIONS OF LAW.

LEVET, District Judge.

This is an admiralty suit wherein a ship (S.S. Candy) tied up to a pier lengthwise, partially broke loose and did extensive damage to plaintiff's scow and other stevedoring equipment tied to the ship. The defendant shipping company (Alexandra) has counterclaimed for the equipment it lost when the ship broke loose.

After hearing the testimony of the parties, examining the exhibits and the proposed Findings of Fact and Conclusions of Law submitted by counsel, this court makes the following Findings of Fact and Conclusions of Law:

### FINDINGS OF FACT

1. This court has jurisdiction over the persons and subject matter of this controversy. 28 U.S.C. § 1333.

2. Plaintiff, Weeks Stevedoring Co., Inc. (Weeks), is a New Jersey corporation.

3. Defendant, Alexandra Navigation Corp., Ltd. (Alexandra) is a corporation organized and existing under the laws of the Republic of Panama.

4. The ship S.S. Candy is owned by Alexandra and was owned by Alexandra at all times relevant to this suit.

5. On or about February 25, 1965 the S.S. Candy was tied up to the north side of pier 7 of the Central Railroad of New Jersey at Jersey City, New Jersey. (1;[1] Ex. 5.)

While the S.S. Candy was tied up to pier 7 on February 25, 1965 it was being loaded by Weeks with a cargo of scrap iron. In conjunction with the loading of the scrap iron onto the S.S. Candy, Weeks tied up and secured four scows

1. Numbers in parentheses, unless otherwise noted, refer to the stenographic minutes of this trial before this court on November 14, 1972.

and three floating cranes to the starboard side of the S.S. Candy. (5; Ex. 5.)

6. The S.S. Candy was tied up with nine wire springs and manila lines, fore and aft, all of which belonged to her. (Lucas 10, 14–15.)[2] The ship's crew handled the lines aboard the ship, while the shore lines were handled by independent longshore labor at the direction of the S.S. Candy's master (3, 27), which is the custom in New York Harbor. (45.)

7. None of Weeks' employees took part in the mooring or securing of the S.S. Candy to pier 7. (3, 4.)

8. The S.S. Candy broke away from the pier twice on February 25, 1965. (9.) The first occasion was during the noon hour, when the stern portion of the S.S. Candy broke loose. (9) The stern portion of the S.S. Candy was subsequently resecured by her officers and crew. Weeks' employees took no part in resecuring the vessel. (10.) On the second occasion, again the stern of the S.S. Candy broke loose, swung northward and pinched Weeks' scow No. 45 against an adjacent pier, No. 6. (Lucas 13; Ex. 5.)

9. On February 25, 1965, at the times material hereto, the wind was from the southeast, gusting up to and above 40 miles per hour. (40.)

10. On February 25, 1965 there was also an extra high tide and a harbor chop due to the high winds. (40.)

11. Neither the weather conditions nor the tide conditions were as severe on February 23 and 24, 1965 as they were on February 25, 1965. (44.)

12. Weeks tied up its equipment alongside the S.S. Candy prior to the time the aforesaid extraordinary weather and tide conditions began on February 25, 1965. (44.)

13. Weeks' stevedores had requested the ship to put out additional lines to insure that the S.S. Candy was securely moored, but the S.S. Candy did not do this. (Lucas 10.)

14. The combined effect of the high winds and extra high tide put additional strain on the mooring lines of the S.S. Candy, and at approximately 1635 on February 25, 1965 the S.S. Candy's stern broke loose, swung northwards and pinched Weeks' scow up against pier 6, causing extensive damages to the Weeks' scow and pier 6. (40–43; Ex. 5.).

15. The master of the S.S. Candy was aware of the changed weather and tide conditions (41), referred to in Findings of Fact 9, 10, 12, 14, when the accident occurred.

## DISCUSSION

■ Maritime law has established the basic rule that when a moored vessel breaks loose and drifts, thereby colliding with another vessel, those in charge of the offending ship are required to explain that the accident did not happen through their own fault. The Louisiana, 3 Wall. 164, 70 U.S. 164, 18 L.Ed. 85 (1865).

In The Louisiana, supra, the United States Supreme Court noted that the fact that a vessel on arriving at the wharf is moored in a way which, in reference to the state of the tide and wind at *that time*, is proper, and that in this position she is made fast as she can be is not an excuse for her breaking away on a *change of tide and wind*, if ordinary nautical skill would have suggested that such a change would produce different and reversed conditions of risk. In the instant action the ship was on notice of the changed conditions. (Finding of Fact 15.)

The court in The Louisiana went on to state: "The fact that the captain and mate 'did not anticipate the breaking away of the vessel, and thought the lines sufficient to hold her,' may prove their want of judgment, but not that 'the accident was unavoidable;'" (p. 174), thus establishing the rule that where a

---

2. "Lucas" and the numbers following refer to the page numbers of a deposition of

Charles R. Lucas read into evidence at the trial.

moored vessel breaks loose and drifts, thereby colliding with another vessel, those in charge of the offending vessel are required to explain that the accident did not happen through their fault in order to be free of liability. See also The Chickie et al., 141 F.2d 80 (3rd Cir. 1944).

City Compress & Warehouse Co. et al. v. United States et al., 190 F.2d 699 (4th Cir. 1951), specifically held that where the choice of lines and devices on the wharf used to secure the ship is supervised by a docking master employed by a ship, ultimate responsibility is on the ship owner to see that the ship is properly moored. See also Medomsley Steam Shipping Company v. Elizabeth River Terminals, Inc., 354 F.2d 476 (4th Cir. 1966).

In Mickle v. The Henriette Wilhelmine Schulte, 188 F.Supp. 77, 80 (N.D.Cal. 1960), the court noted that the occupier of a ship "owes certain duties of care to a business invitee, especially to an independent contractor, such as a stevedoring company, which comes onto the premises to perform services, including the duty not to cause injury by negligent activity; * * * ; and the duty to inspect the premises to discover dangerous conditions." See also Kermarec v. Compagnie Generale Transatlantique, 358 U.S. 625, 79 S.Ct. 406, 3 L.Ed.2d 550 (1959); Hugh v. Dampskisaktieselskabet International, 170 F.Supp. 601 (S.D.Cal. 1959), aff'd sub nom. Metropolitan Stevedore Co. v. Dampskisaktieselskabet, 274 F.2d 875 (9th Cir.), cert. denied, 363 U.S. 803, 80 S.Ct. 1237, 4 L.Ed.2d 1147 (1960).

The *Mickle* decision, supra, was endorsed by the United States Supreme Court in Federal Marine Terminals v. Burnside Shipping Co., 394 U.S. 404, 89 S.Ct. 1144, 22 L.Ed.2d 371 (1968), wherein it was noted "[t]hat duty of care imposed by law extends to the stevedoring company as well as to others lawfully on the ship, and its breach gives rise to a cause of action for any

damages proximately caused. It is not disputed, for example, that if the shipowner's negligence caused damages to the stevedoring contractor's equipment, those damages would be recoverable in a direct action sounding in tort." At p. 415, 89 S.Ct. at p. 1150.

The defendant at trial and in its post-trial proposed findings of fact and conclusions of law argued that there is a "definite duty on the part of the stevedore to call to the attention of the ship's officers all unseaworthy conditions and to stop all operations when it appears that to proceed would be unsafe." Nordeutsher Lloyd, Brennan v. Brady-Hamilton Stevedore Co., 195 F.Supp. 680, 683. (D.Or.1961).

However, in Humble Oil & Refining Co. v. Philadelphia Ship Maintenance Co., 444 F.2d 727, 732 (3rd Cir. 1971), the Court of Appeals of that circuit pointed out that "the reasonableness of the stevedore's actions must not be evaluated in isolation. Whether the shipowner has created conditions which so impede the stevedore's performance that his breach may be excused is a weighing process, Waterman Steamship Corp. v. David, 353 F.2d 660 (5th Cir. 1965), peculiarly within the province of the fact finder. Atlantic & Gulf Stevedores, Inc. v. Ellerman Lines, 369 U.S. 355, 82 S.Ct. 780, 7 L.Ed.2d 792 (1962)."

The Third Circuit in that case also noted that:

"It is vital to recognize that the stevedore's breach must be independently demonstrated. As noted most recently by the Fifth Circuit, a stevedore, through his employee, may in fact activate the unseaworthy condition, but nonetheless still not violate his warranty of workmanlike performance. See Delaneuville v. Simonsen, 437 F.2d 597, 601 (5th Cir. 1971)."

Humble Oil & Refining Co. v. Philadelphia Ship Maintenance Co., supra, 444 F.2d footnote 8 at page 732.

■ Defendant also argues that there is a duty to all who tie craft onto a

moored vessel to inspect the lines of the moored craft to determine the safe limitations thereon. Defendant's authority for such is misplaced factually here. At the time the stevedore tied its crafts and equipment to the moored ship S.S. Candy, even if the lines were then sufficient, the burden to make fast additional lines where weather and tide conditions changed still rested with the ship. The Louisiana, supra. In this instant controvery, the ship's officers in fact were requested to put out additional docking lines (Finding of Fact 13) and were on notice that the lines were insufficient since the S.S. Candy had broken away on the same day prior to the accident. (Finding of Fact 8.)

## CONCLUSIONS OF LAW

1. This court has jurisdiction over the persons and subject matter of this action.

2. Defendant has not shown that the accident was not due to its fault or negligence nor that it took appropriate steps to prevent such accident.

3. Plaintiff has shown by a fair preponderance of the credible evidence that defendant was negligent in its duties to maintain its ship by securely mooring it at pier 7.

4. Defendant has offered no proof as to liability with respect to its counterclaim against plaintiff for defendant's lost and damaged equipment. Therefore the counterclaim must be dismissed.

5. Plaintiff and defendant are entitled to an interlocutory judgment which shall provide for determination by a Special Master the damages to which plaintiff may be entitled for the damages to its equipment caused by the S.S. Candy on February 25, 1965, but which judgment shall provide for the dismissal of the counterclaim of defendant.

6. Plaintiff is entitled to costs.

Settle interlocutory judgment, providing for a Special Master, promptly upon notice.