**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| JESSICA ROSA GARCIA, | No. 09-72730 |
| Petitioner, | Agency No. A088-890-849 |
| v. | |
| ERIC H. HOLDER, JR., Attorney General, | MEMORANDUM [*] |
| Respondent. | |

On Petition for Review of an Order
of the Board of Immigration Appeals

Argued and Submitted December 8, 2011
San Francisco, California

Before: LUCERO,[**] CALLAHAN, and N.R. SMITH, Circuit Judges.

Jessica Garcia petitions for review of the Board of Immigration Appeals'

("BIA") decision affirming her removal order. Garcia argues that the government

did not meet its burden of proving that she is an alien. See Murphy v. INS, 54 F.3d

[*] This disposition is not appropriate for publication and is not precedent
except as provided by 9th Cir. R. 36-3.

[**] The Honorable Carlos F. Lucero, Circuit Judge for the Tenth Circuit,
sitting by designation.

-1-

605, 608 (9th Cir. 1995). We grant the petition and remand. Because the parties are familiar with the record, we recount the facts only as necessary to explain our decision.

**I**

In removal proceedings, the United States must first prove alienage by "clear and convincing evidence" before the burden shifts to the alleged noncitizen to prove citizenship or lawful entry by a preponderance of the evidence. Murphy, 54 F.3d at 608-09. Setting out a "prima facie case of alienage based on circumstantial evidence" does not shift the burden of persuasion; it "merely requires the opponent to go forward" with rebuttal evidence. Id. at 609.

To prove Garcia's foreign birth, the government relied entirely on Garcia's past statements. The government submitted evidence that Garcia told an ICE officer that she was born in Mexico. It also presented various official documents in which Garcia indicated she was born in Mexico.[1] In response, Garcia, whose mother died when she was a small child and whose father is unknown, testified that while she had held herself out as a Mexican citizen on these occasions, she did not know whether she was born in the United States or in Mexico. According to

---

[1] The government also presented an undisputedly fraudulent Mexican birth certificate, which Garcia used to attend school and access other public programs.

Garcia, when asked to state her place of birth, she "will pick a city [to be from] since I don't know . . . where . . . I was born."

Neither the Immigration Judge ("IJ") nor the BIA made any findings about the credibility of this testimony purporting to contradict the government's evidence of foreign birth. See Kalubi v. Ashcroft, 364 F.3d 1134, 1140-41 (9th Cir. 2004) ("[T]he BIA must explain what factors it has considered or relied upon sufficiently that we are able to discern that it 'has heard, considered, and decided.'"). Instead, the IJ treated the government's evidence "as a practical matter the only evidence we have" and shifted the burden to Garcia to prove that she was born in the United States. The Board affirmed the IJ's decision.

## II

At the outset of our analysis, we note what this case is about and what it is not about. The narrow issue before us is whether the government proved that Garcia was born in Mexico. The government's sole evidence of foreign birth is the alleged alien's prior statements, even though the alien has testified that she had no basis for making those statements and the IJ failed to determine the credibility of this testimony. This case is not about whether a person who the government has

proven to be an alien may, "simply by proclaiming 'I don't know where I was born,' . . . stay in the country." (Dissent at 2-3).

The government's case consists of Garcia's past statements that she was born in Mexico, but Garcia testified that she does not have knowledge of where she was born. Accordingly, "whether there is clear, unequivocal and convincing evidence that [Garcia] is an alien resolves itself into a determination of whether [Garcia's] testimony . . . is worthy of belief." Matter of Lugo-Guadiana, 12 I&N Dec. 726, 729 (BIA 1968). When "alienage is charged . . . and the Government has introduced . . . evidence in support of the charge and the opposing side has introduced evidence intended to rebut the Government's case[,] there must be an evaluation . . . of all the evidence and a finding made with regard to its credibility before the test for burden of proof . . . comes into play." Id. at 730 (emphasis added).

As such, the BIA/IJ erred by shifting the burden to Garcia without first determining whether the testimony she presented credibly contradicted the government's prima facie evidence of foreign birth. See Murphy, 54 F.3d at 610 (explaining that prima facie evidence is "evidence which, if unexplained or uncontradicted, is sufficient to sustain a judgment in favor of the issue which it

-4-

supports, but which may be contradicted by other evidence.")  We therefore grant Garcia's petition and remand for the BIA to determine, after weighing the evidence, whether the government has met its burden.

## III

Petition **GRANTED** and **REMANDED**.  The government's motion for leave to file the tendered corrected brief is also **GRANTED**.

Garcia v. Holder, No. 09-72730

CALLAHAN, Circuit Judge, dissenting:

I respectfully dissent. The majority's decision exalts form over substance while ignoring the only conclusion the evidence will support: a denial of relief.

In its decision, the BIA correctly recognized that the government "bears the burden of establishing all facts supporting removability by clear, unequivocal, and convincing evidence." The BIA also correctly recognized that, under *Matter of Lugo-Guadiana*, 12 I. & N. Dec. at 730, "'there must be an evaluation and a weighing of all the evidence and a finding made with regard to its credibility before'" that test for burden of proof "'comes into play.'"

The BIA found no reversible error in the Immigration Judge's ("IJ's") determination that Garcia failed to rebut the presumption of alienage with a preponderance of credible evidence. The BIA reasonably explained that "virtually all of the evidence contained in the record reflects that the respondent is a native and citizen of Mexico." Specifically, Garcia admitted to an immigration officer that she was born in Mexico, a fact that the government's highly probative immigration form reflected and that the officer testified to before the IJ. *See Espinoza v. INS*, 45 F.3d 308, 310 (9th Cir. 1995) (explaining that such forms are

1

presumed reliable and trustworthy in the absence of evidence to the contrary). In addition: (1) Garcia had long represented that she and her children were Mexican by relying on a fraudulent Mexican birth certificate; (2) Garcia claimed U.S. citizenship only recently and only expressed uncertainty as to her place of birth after being placed in removal proceedings; (3) neither Garcia nor her only witness, her great aunt, were able to say that Garcia was or could have been born in the United States; and (4) there was absolutely no documentation showing that Garcia was or could have been born in the United States. The only contrary evidence—the mere *possibility* that Garcia was born somewhere else based on her later inconsistent statements—"does not amount to substantial credible evidence proving United States citizenship."

The BIA acknowledged the IJ did not make an adverse credibility finding, but found that did not matter because "the unclear and speculative nature" of Garcia's and her aunt's testimony—"which is the only evidence that supports [Garcia's] claim"—was insufficient to rebut the overwhelming evidence of alienage. That is, the BIA determined there was *no* "reliable" or "credible" evidence Garcia was born in the United States. The BIA would have reached this conclusion before or after determining whether Garcia and her aunt were credible, and before or after weighing their testimony against the government's evidence.

2

In faulting the BIA for failing to use specific words in its decision, the majority ignores the agency's reasonable conclusion that Garcia was not born in the United States. (Indeed, that was the *only* reasonable conclusion given the record evidence. Among other things, Garcia's testimony contradicted evidence that she, for many years, had successfully represented that she was born in Mexico.) As a result, the majority's decision stands for the untenable proposition that an inadmissible alien, simply by proclaiming "I don't know where I was born," gets to stay in the country despite overwhelming evidence of foreign birth. A remand will only require the BIA and IJ to redo what they already have done—"evaluat[e] and . . . weigh[ ] . . . all the evidence and [make] a finding . . . with regard to its credibility." *Matter of Lugo-Guadiana*, 12 I. & N. Dec. at 730. Because the government already has proven Garcia's alienage by clear and convincing evidence, I would deny Garcia's petition for review.