Clinton **GILCHRIST**

v.

**MITSUI SEMPAKU K. K. (Defendant and Third-Party Plaintiff),**

v.

**JARKA CORPORATION (Third-Party Defendant), Appellant.**

No. 17113.

United States Court of Appeals Third Circuit.

Argued Sept. 27, 1968.

Decided Dec. 31, 1968.

Certiorari Denied March 24, 1969.
See 89 S.Ct. 1195.

F. Hastings Griffin, Jr., Dechert, Price & Rhoads, Philadelphia, Pa., for appellant.

George D. Sheehan, Rawle & Henderson, Philadelphia, Pa., for appellee.

Before BIGGS, GANEY and FREEDMAN, Circuit Judges.

## OPINION OF THE COURT

GANEY, Circuit Judge.

Plaintiff, a longshoreman, obtained a verdict against the defendant-shipowner for either its negligent conduct or the unseaworthiness of the Matsudasan Maru, a ship upon which he was injured during the unloading operation of bulk sugar. The shipowner in turn recovered a verdict for indemnity against the third-party defendant stevedoring company, plaintiff-longshoreman's employer at the time he was injured. The same jury returned both verdicts. An amount, agreed to by the shipowner and the stevedoring company, was added to the judgment of indemnity. The stevedoring company appeals from the judgments denying its motion for judgment n.o.v. and its motions for a new trial, and the awarding the shipowner its expenses for defending the principal action.[1]

At the trial, lasting seven days, there was evidence that the hold of the ship in question carried approximately 1,300 tons of bulk sugar and that it was unloaded by means of a large clamshell crane working in a vertical plane. When the loose sugar in the sides of the hold became inaccessible to the jaws of the crane, longshoremen pushed it to the center of the hatch with bulldozers. When the major portion of the loose sugar was removed from the hold, a gang of longshoremen was sent into the hold to sweep and shovel up the remaining sugar on the floor and scrape the sugar which had caked on the bulkheads. The plaintiff-longshoreman, Clinton Gilchrist, was injured when a scraper

1. The reasons given by the district court for denying the motion for judgment n.o.v. and the first motion for a new trial appears in a Memorandum Opinion at 266 F.Supp. 961 (E.D.Pa.1967).

fell from the hands of one of his fellow workers and struck him on the head. Gilchrist testified, on cross-examination by counsel for the stevedoring company, that if the sugar had been unloaded and scraped in stages, the longshoremen would not have been required to reach as high as they did in order to scrape the caked sugar from the sides of the ship. There also was evidence that the scraper which struck Gilchrist was dull and shorter than the others, and that the longshoremen in the hold did not wear helmets.

From this evidence the jury could have found: (1) The ship was negligent or unseaworthy, or both, because when it was turned over to the stevedoring company, its loading was such as to permit sugar to cake on the bulkheads; (2) The stevedoring company was negligent in unloading the sugar in the manner that it did, such as (a) scraping the caked sugar from the bulkheads, (b) lowering the level of the sugar to such a depth before ordering the workers to scrape the sides, (c) failing to inspect the scrapers and requiring the longshoremen to use sharp scrapers with sufficient length handles, (d) requiring the men to work too close together, and (e) failing to require the longshoremen to wear protective headgear.

█ The stevedoring company maintains that the jury could have concluded that the conduct of the shipowner in turning over to the stevedoring company a ship with caked sugar on its bulkheads was the basic or real cause of plaintiff-longshoreman's injury, even though that same body might have found that the stevedoring company's conduct was a substantial factor in causing the injury. If the jury came to these conclusions, the argument runs, it had no alternative but to find for the stevedoring company on the issue of indemnity, and the jury should have been so instructed. The trial judge did not misapply the substantive law of indemnity in refusing to charge in this vein. See Crumady v. The J. H. Fisser, 358 U.S. 423, 428–429, 79 S.Ct. 445, (1959); Italia Soc. per Azioni di Navigazione v. Oregon Stevedoring Co., 376 U.S. 315, 320–321, 84 S. Ct. 748, 11 L.Ed.2d 732 (1964); Johnson v. Sword Line, Inc., 257 F.2d 541, 545 (C.A.3, 1958).

█ The stevedoring company also argues that the jury could have found that on the day plaintiff-longshoreman was injured, it performed the unloading operation in the usual manner, which was reasonably proper, and there was nothing unusual until a longshoreman tried to chop away at the caked sugar, and the scraper was not sharp enough to cut into the unforeseeably latently hard bit of sugar. The fault with this argument is that no evidence was produced that the caked sugar was unforeseeably hard.

The stevedoring company also claims that the charge on causation was wrong. The trial judge told the jury that the shipowner is entitled to indemnity if they found that the unseaworthiness of the ship or the negligence which caused the shipowner to be liable was "brought into play" by the stevedoring company's breach of warranty of workmanlike service. He also told the jury that it should find for the shipowner if they concluded that the stevedoring company's breach of its duty of workmanlike conduct "was one of proximate cause of the injury [to plaintiff-longshoreman] and caused the liability of the shipowner." In this connection he told the jury to bear in mind the definitions given in his charge in the principal action where "proximate cause" was defined in part as being such conduct "as to lead reasonable men to regard it as a cause." Because of this charge the stevedoring company maintains that the jury was told that no matter how much they thought the shipowner's liability was in fact caused by the ship itself, they should nevertheless give the shipowner indemnity if the stevedoring company's breach of warranty contributed to that liability even if it were as little as five to ten percent.

█ Counsel for the stevedoring company did not object to the use of the

term proximate cause or its definitions in the charge either in the principal action[2] or in the third-party action. The jury had already found in the principal action that the shipowner was liable to the injured plaintiff-longshoreman. This liability stemmed only from the conduct of the stevedoring company. Even if the jury found that the caked sugar made the ship unseaworthy, this condition could not have injured the plaintiff-longshoreman unless it was brought into play or acted upon by the longshoremen. Consequently, the issues remaining to be decided by the jury were: (1) Did the stevedoring company breach its warranty of workmanlike service, and (2) Was there any conduct on the part of the shipowner which was sufficient to wipe out its right to indemnification. The stevedoring company should not be heard to complain of a portion of a charge which was more favorable than that to which it was entitled.

■ Next, the stevedoring company complains about the charge on latent condition. The trial judge told the jury that a shipowner can recover indemnity from a stevedoring company for its breach of warranty of workmanlike service even though the defect causing the injury was latent and the stevedoring company was without fault. The reason for its objection is that such a charge was inapplicable to the indemnity action. As pointed out by counsel for the stevedoring company, the only possible latent condition in the case was the degree of hardness in the caked sugar on the bulkhead, and on this factual issue evidence was lacking. The scrapers which the stevedoring company brought aboard the ship may have been too dull or too short for the purpose for which they were to be used, but such defects were open to view and not latent. We agree that this portion of the charge was unnecessary.[3] However, we are of the opinion that the stevedoring company was not prejudiced by such reference when the charge is considered in its entirety. In summarizing the situation to the jury, the trial judge said:

> "* * * The shipowner's negligence is not fatal to recovery against the stevedore in this area of contractual indemnity, and thus there is no application of any theory of primary or secondary negligence. A shipowner can recover from a stevedore for breach of warranty even though the [defect] causing the [injury] was latent, and the stevedore was without fault. The stevedore's implied warranty of workmanlike performance is sufficiently broad to make him liable where there is a failure to furnish reasonably safe equipment pursuant to its contract with the shipowner notwithstanding the fact that the stevedore was not negligent.

> "Now let me give you an example of what I mean. Let's take the cable case again. Let's assume a stevedoring company brings onto a ship a cable to life 3 tons and when it looked at it and inspected it in a reasonable manner they would have reason to believe that the cable would in fact, lift 3 tons, but when it lifted 3 tons it snapped in the center and then only after it was broken it became obvious that some of the internal strands were defective * * *. The stevedoring company was not negligent because they inspected it, but, nevertheless,

---

2. Contrary to the position taken by counsel for the stevedoring company at the trial, his client was in the principal action, and he could have interposed any objection to the charge which the shipowner could have made. See Rule 14 of the Federal Rules of Civil Procedure concerning third-party practice; Lecklikner v. Transandina Compania Naviera, S. A., 390 F.2d 179 (C.A.3, 1968).

3. Apropos the stevedoring company's objection on this point, counsel for the shipowner informed the trial judge: "I would have no objection to telling the jury there was no latent condition here. I think the law in Italia [Italia Soc. per Azioni di Navigazione v. Oregon Stevedoring Co., 376 U.S. 315, 84 S.Ct. 748] still applies as a general principal of law."

they could be liable because the cable was not reasonably safe equipment to do the job it was intended to be used for." [4]

We can construe this portion of the charge in the light that the trial judge was telling the jury to what extent the law goes in permitting recovery of indemnity against a stevedoring company by a shipowner and not as specifically referable to the facts of this case. Since there was no evidence of any latent defect in the scraper brought aboard ship by the stevedoring company, the jury could not have been misled by this discussion. Thus the effect of this portion of the charge was to inform the jury that if they believed that any of the equipment supplied by the stevedoring company was not reasonably safe for the purpose for which it was intended, the stevedoring company could be held liable to the shipowner for indemnity, even though the former was not negligent in failing to discover the defect.

■ The stevedoring company claims that the trial judge's failure to tell the jury that the shipowner owes the stevedoring company a duty to supply it with a vessel reasonably free of defects was reversible error. We disagree. The shipowner is not deprived of its right of indemnity by the fact that there may have been an improper stow. See Italia Soc. per Azioni di Navigazione v. Oregon Stevedoring Co., supra, 376 U.S. 315, 323, 84 S.Ct. 748; D/S Ove Skou v. Hebert, 365 F.2d 341, 348–350 (C.A.5, 1966).

■ The stevedoring company complains of the trial judge's use of the words "brought into play". The trial judge told the jury that the shipowner is entitled to indemnity if they found that

"* * * the fault of the stevedoring concern brought the unseaworthiness of the vessel into play and the

fault amounted to a breach of warranty of workmanlike service. Or, similarly, if you found that the negligence which caused the liability of the shipowner was brought into play by a breach of the warranty of workmanlike service—the key words are 'brought into play'—in such circumstances the vessel owner may similarly recover."

When the trial judge repeated in substance this portion of the charge, counsel for the stevedoring company objected "to the use of the words 'brought into play' without any explanation of those words." At this point, the trial judge asked him how he defined them. Counsel replied that in the particular confines of this case he didn't know how to define them, and added, "I don't think it is an applicable charge."

Here again that portion of the charge claimed to be erroneous was not validly objectionable. Whatever condition or situation was the basis for liability of the shipowner to the plaintiff-longshoreman, the condition was brought into play or the situation was brought about by the stevedoring company. As we have mentioned earlier herein, the issue before the jury in the indemnity action was whether the stevedoring company had breached its warranty of workmanlike service. The stevedoring company was not harmed by this portion of the charge.

In the midst of their deliberations, the jury forwarded a note to the trial judge asking him who would be liable if they felt that both parties were at fault. He obliged by giving additional instructions. The stevedoring company objected to the additional charge on the ground that it did not answer the jury's question because allegedly it did not permit the jury to "come to grips" with the question as to which party is more at fault by reason of the condition of the

4. In summarizing again, the trial judge said to the jury: "The stevedore's implied warranty of workmanlike performance is sufficiently broad to make him liable where there is a failure to furnish *reasonably safe equipment* pursuant to its contract with the shipowner notwithstanding the fact that the stevedore was not negligent." (Emphasis added.)

load or the method of the work followed by the longshoremen.

■■ This objection brings into bold relief the stevedoring company's main difficulty in this case. The law of indemnity is not concerned with the comparison or degree of fault·of the shipowner and the stevedoring company. The trial judge explained to the jury several times that if they found that the stevedoring company had performed its contract in a workmanlike manner the shipowner had no right to recover against the stevedoring company. He informed them in substance that the shipowner could not recover unless the conduct of the stevedoring company amounted to a breach of warranty of workmanlike service. He also told them that the right of indemnity could be defeated if they found that there had been inducement or participation on the part of the shipowner. In so charging the trial judge committed no error requiring a new trial.

■ The stevedoring company complains of the court's denial of its motion to file a supplemental pleading so as to allege, as a defense to the indemnity claim, that the shipowner was not acting in good faith, and its refusal thereafter to grant it a continuance. We are satisfied that these motions were within the trial judge's discretion and were properly denied.

Its motion for a new trial based on after discovered evidence was also properly denied. The evidence referred to in the motion was not in the legal sense "after discovered evidence." See Brown v. Pennsylvania R. Co., 282 F.2d 522 (C.A.3, 1960); Gibson v. International Freighting Corp., 173 F.2d 591, 592–593 (C.A.3, 1949); Kender v. General Expressways, Ltd., 34 F.R.D. 237 (E.D.Pa. 1963). Also see United States v. Rutkin, 208 F.2d 647 (C.A.3, 1953).

Finally, the stevedoring company complains of the award of an additional jury trial giving the shipowner an opportunity to offer evidence on the amount of its defense expenses about which it offered no evidence at the trial. After the jury had returned its verdict on March 24, 1966, and had been discharged, counsel for the victorious shipowner asked that "the judgment be formed to include the shipowner's counsel fees and expenses in defending the principal action." The stevedoring company objected on the ground that no evidence had been presented on the amount of the fees and expenses and their reasonableness. On March 28, 1966, a judgment on the verdict was entered. The judgment contained the notation: "* * * the third-party plaintiff to have right of indemnity against third-party defendant for the amount paid to plaintiff and costs, (the Court reserves its ruling on the third-party plaintiff's request for attorney's fees and expenses) * * *." The shipowner did not file a motion with respect to the above until April 19, 1966, when it filed a paper entitled "Motion for Entry of Judgment" and in which it asked, in addition to the amount it had paid plaintiff-longshoreman without interest, for costs, and counsel fees and expenses set out in the motion. On April 3, 1967, over a year after judgment was entered on the verdict in the indemnity action, the district judge signed an order directing counsel to make every reasonable effort to come to an agreement on the question of counsel fees, and should they be unable to agree, "a separate jury trial on that issue in accordance with 42(b) of the Federal Rules of Civil Procedure will be scheduled in this action." In the memorandum opinion which followed on April 26, 1967, the judge did not explain why he signed the order for a partial trial except as follows:

"This Memorandum Opinion is filed in accordance with that Order [of April 3, 1967] and I am still waiting to hear, formally, from counsel, whether they can agree on the issue of counsel fees. This issue has been severed for a subsequent trial, if necessary, should the parties be unable to

come to agreement on the amount of legal fees and related costs to be recovered in the indemnity action."

On November 20, 1967, the issue of counsel fees was called for trial. Prior to trial counsel agreed that the shipowner had incurred an attorney's fee and expenses in the amount of $3,751.03, and that judgment be entered for this additional amount. On November 24, the following order and judgment was entered:

"At the call of the trial on the issue of counsel fees and expenses, counsel for third-party defendant duly objected to the trial's being held on the grounds (1) that the judgment for indemnity, in accordance with third-party defendant's post-trial motions, was erroneously entered, and (2) that the court lacked power or was in error in ordering the post-verdict jury trial of counsel fees and expenses. He stated, however, that subject to those objections his client, in order to avoid the expense and inconvenience of the jury trial which has been ordered, would not dispute that defendant incurred reasonable counsel fees and expenses of $3751.03. Counsel for defendant agreed that defendant would limit its claim to that amount in compromise of its claim of $4412.98. In accordance with my prior ruling the objections of third-party defendant are overruled. Accordingly I order the following:

"JUDGMENT.

"The clerk is directed to enter judgments in favor of Mitsui Sempaku K. K. and against Jarka Corporation (1) in the amount of $27,556 with interest from April 19, 1966, and (2) in the amount of $3751.03."

In the case of Ellerman Lines, Ltd. v. Atlantic & Gulf Stevedores, Inc., 339 F.2d 673, Judge Hastie, now Chief Judge of this Court, said at p. 674: "If conduct of [the stevedoring company] in violation of its warranty to [the shipowner] was the *sole* responsible cause of [the longshoreman's] injury, as the libel alleges, the expense to which [the shipowner] is subjected in defending [the longshoreman's] suit against it to recover for that injury is an element of damages caused by the [stevedoring company's] breach of warranty, even if [the shipowner] succeeds in defeating [the longshoreman's] claim." (Cited cases omitted and emphasis added.) There has been no showing in the actions here involved that the conduct of the stevedoring company was the sole responsible cause of the plaintiff-longshoreman's injury. Therefore, the shipowner was not entitled to recover the expenses to which it was subjected in defending the plaintiff-longshoreman's action against it from the stevedoring company. Hence we need not determine whether the verdict was res adjudicata on the defending expense issue and whether the district court had the power to sever that issue and grant a separate jury trial on its own motion, and even though it did have such power in this action, whether it had to be exercised within ten days from the entry of judgment on the verdict.

The stevedoring company's agreeing to the amount of the shipowner's defense expenses and the entry of judgment for that amount if it should turn out that the shipowner is entitled to be reimbursed for those expenses does not render the issue moot. The position of the stevedoring company is made clear by the recital in the judgment of November 24, 1967.

Accordingly, the judgments of the district court denying the motion of the stevedoring company (Jarka Corporation) for judgment n. o. v. and its motions for a new trial will be affirmed; and the second part of the judgment of November 24, 1967, awarding the shipowner (Mitsui Sempaku K. K.) an additional amount in the sum of $3,751.03 will be reversed.