UNITED STATES LINES COMPANY

v.

MARITIME SHIPCLEANING AND MAINTENANCE CO., Inc. and Northern Metal Co.

No. 137 of 1966.

United States District Court, E. D. Pennsylvania.

June 29, 1970.

21.  9 Cavitch, Business Organization 232.01(1) at 2025 (1969).

Rawle & Henderson, by Harrison G. Kildare, Philadelphia, Pa., for plaintiff.

F. Hastings Griffin, of Dechert, Price & Rhoads, James B. Doak, of Labrum & Doak, Philadelphia, Pa., for defendants.

## OPINION

HIGGINBOTHAM, District Judge.

### .I.

### INTRODUCTION

Joseph P. Rodack, a longshoreman, was injured while loading cargo aboard plaintiff's vessel, the SS PIONEER COVE, on July 25, 1961. Rodack sued plaintiff in this Court and recovered a jury verdict of $35,000. Plaintiff thereafter filed this suit in admiralty against Rodack's employer, a stevedoring company, and against the shipcleaning company that had cleaned the ship on July 17 and 23, 1961, based on the theory that the ship is entitled to indemnification from both defendants.

Who will bear the ultimate financial responsibility for Rodack's injuries is dependent upon the resolution of three issues in this non-jury action. The Court must first determine whether the findings in the original suit of Rodack against the plaintiff are binding on the parties in this subsequent indemnity action. Secondly, it must be ascertained whether the plaintiff is entitled to recover the amount of the Rodack judgment against the defendants on the evidence presented and the theories of liability advanced. Related to this issue is whether the defendants are entitled to directed verdicts on the issue of liability. Finally, if plaintiff is entitled to indemnification from either or both defendants, I must decide whether plaintiff can recover the amounts expended to defend the Rodack suit.

For the reasons stated hereafter, the findings of the original suit by Rodack against the plaintiff are not binding on the parties to this suit. Further, I find that plaintiff is entitled to recover the amount of the judgment against the shipcleaner, but not against the stevedore. Thus, ultimate responsibility for Rodack's injuries will fall upon the ship-

cleaners. Since plaintiff's counsel did not present any admissible evidence as to the legal and other related expenses incurred in the defense of the *Rodack* suit, it is not entitled to any judgment in its favor for the legal and related defense expenses.

## II.

### FINDINGS OF FACT

1. The Court has jurisdiction over the parties and subject matter of this proceeding.

2. The plaintiff, United States Lines, Inc., formerly known as United States Lines Company (hereinafter referred to as "U. S. Lines"), is a corporation engaged in the operation of merchant vessels, and at all material times to this action it owned, operated, managed and controlled the steamship, the SS PIONEER COVE.

3. Defendant, Maritime Shipcleaning and Maintenance Co., Inc., (hereinafter referred to as "Maritime") was at all material times a corporation engaged in the business of ship cleaning in the Port of Philadelphia.

4. Defendant, Northern Metal Company, (hereinafter referred to as "Northern Metal") was at all material times to this action a corporation engaged in furnishing terminal facilities and stevedoring services to merchant vessels in the Port of Philadelphia.

5. On July 14 and 15, 1961, a cargo of tallow was loaded into the two forward deep tanks in No. 4 hold of the steamship, the SS PIONEER COVE, at Pier 24, South Wharves, Philadelphia. The four deep tanks are located at the bottom of the hold, and when closed constitute the floor of the lower tween deck. (N.T., 69, 142.)

6. Plaintiff engaged the services of Maritime to clean the holds of the SS PIONEER COVE upon arrival at Pier 80, South Wharves, on July 17, 1961, after tallow had been loaded into the forward deep tanks in No. 4 hold (N.T., 67, 78). This cleaning was understood by Maritime's foreman to include the removal of any tallow spillage from the tank lids of No. 4 hold (N.T., 78).

7. Maritime's employees carried out the contracted cleaning services on July 17, 1961 by broom sweeping the holds and banding and stacking the dunnage. (N.T., 113, 114.) After inspection of the hold, Maritime's foreman certified to the chief officer of the SS PIONEER COVE that the holds were "cleaned", including the No. 4 lower tween deck. (N.T., 80, 106–107, Exhibit P–12.)

8. The SS PIONEER COVE, without cargo in the No. 4 hold except for the tallow stowed in the two forward deep tanks, then proceeded to Baltimore and Norfolk to load cargo in other holds on July 18–22, 1961. There was no cargo activity in No. 4 hold at these two ports. (N.T., 81, 82.)

9. On July 22, 1961 the SS PIONEER COVE returned to the Port of Philadelphia, docking at Northern Metal in order to load government cargo in the remaining hold spaces (N.T., 81–82).

10. The plaintiff again engaged Maritime to clean and remove dunnage in order to prepare the holds for stowage of the government cargo at Northern Metal. Maritime carried out this cleaning contract on July 23, 1961, at which time, its foreman understood that any debris, including any residue of tallow which had not been removed on July 17, 1961 at Pier 80, should be removed. (N.T., 107–108.)

11. Maritime's foreman then certified to the ship's chief officer on July 23, 1961 that the contracted cleaning services had been performed after he or one of his men had inspected the holds, including the tank tops of the No. 4 hold. (N.T., 108.)

12. There is no evidence that any officer of the SS PIONEER COVE or other personnel of plaintiff inspected the No. 4 lower tween deck after the work of the shipcleaners had been completed on July 17 and July 23, 1961.

13. Northern Metal was engaged to load and stow government cargo on the SS PIONEER COVE. On July 25, 1961

Northern Metal's carpenters, under the supervision of carpenter foreman Raskin, entered No. 4 hold at or about 8:00 A.M., in order to prepare the necessary wooden frames and supports for the cargo. (N.T., 118, 151, 173.)

14. Before starting work, Raskin visually inspected the lower tween deck by walking around the wings of the hatch and on the four tank tops which were directly under the hatch opening. The light was adequate and his examination took three to four minutes. (N.T., 174-175, 182, 185-188.)

15. Raskin, an experienced carpenter foreman, made the type of inspection he customarily made upon boarding a vessel. He saw nothing unusual and nothing which would alert him to any danger. (N.T., 174-178, 186.)

16. Immediately thereafter a draft of shoring lumber which was new and clean was landed in the after end of the No. 4 tween deck, and one of the carpenters, Joseph Rodack, picked up a piece of the lumber to take it to a location forward of forward starboard tank top. (N.T., 121, 175.)

17. As Rodack walked across the starboard forward deep tank top, he saw nothing in the appearance of the tank top which indicated the presence of any foreign substance, but as he was walking on the tank top he slipped on a substance which he described as oily and greasy. (N.T., 122-125, 135.)

18. A slick mark of two feet was evident over the space through which Rodack's shoe had travelled. The tank top, aside from the slick area caused by Rodack's fall, was all the same dark color, and there was no evidence of any foreign substances except in the area in which he had slid. (N.T., 125, 135, 176-177, 186, 193-194.)

19. The foreign substance on the tank top was not detectable by Raskin's inspection. He could not see it. (N.T., 186, 193-194.)

20. Under all the circumstances, I find that the foreign substance that caused Rodack to fall was tallow. This tallow was on the tank top when the hold was opened on July 25, 1961. (N. T., 126.)

21. I also find that the broom sweeping of the debris and dirt on the tank tops by Maritime tended to camouflage the tallow. Furthermore, I find that Maritime failed to clean or remove this tallow when it performed cleaning services on the SS PIONEER COVE on July 17 and 23, 1961.

22. The tallow which caused Rodack's accident constituted an unseaworthy condition of the vessel and made it an unsafe place for him to work on the morning of July 25, 1961.

23. The tallow was the direct and proximate cause of Rodack's accident.

24. There was no contributory negligence on the part of Rodack which caused the accident.

25. Plaintiff tendered Northern Metal an unseaworthy ship without warning of the continuing latent dangerous condition which condition had not been eliminated and which was not to be reasonably anticipated by Northern Metal. In the exercise of reasonable care the plaintiff should have known of the existence of the latent dangerous condition.

26. Northern Metal made a reasonable visual inspection of the No. 4 lower tween deck on the morning of July 25, 1961 before the start of the work.

27. In Civil Action No. 30211, Joseph P. Rodack sued the plaintiff in this action, U. S. Lines, for damages arising from his accident which he alleged were caused by the breach of the ship's warranty of seaworthiness and the negligence of the shipowner.

28. Rodack's action was tried before former Chief Judge Clary and a jury starting on February 2, 1966, and resulted in a verdict for the plaintiff against U. S. Lines in the sum of $35,-000 which was thereafter paid and the judgment was marked satisfied of record on September 28, 1966. (N.T., 157, Exhibit P-20.)

29. Neither Northern Metal nor Maritime was a party to the Rodack v.

U. S. Lines action tried before Judge Clary and a jury.

30. Plaintiff tendered the defense of the entire case of Rodack v. U. S. Lines to Northern Metal on March 30, 1965. (N.T., 30, Exhibit P-5.)

31. Plaintiff tendered the defense of the case of Rodack v. U. S. Lines to Maritime in 1966. Although both Northern Metal and Maritime have the same insurance carrier, Liberty Mutual, the earlier communications referred only to Northern Metal.

32. Plaintiff's losses resulting from the accident were caused solely by Maritime's negligent performance of its contract to clean the holds of the SS PIONEER COVE on July 17 and 23, 1961.

33. The discussion and conclusions of law that follow will constitute additional findings of fact.

### III.

### DISCUSSION

A. *The Effect of Findings in Rodack v. U. S. Lines.*

█ The parties in this suit stand in the relationship of indemnitee and alleged indemnitors. Neither purported indemnitor was a party to the original action between the indemnitee, U. S. Lines, and the third party, Rodack. Whether the findings of the jury upon special interrogatories in the Rodack suit[1] are binding on the parties in this subsequent indemnity action is dependent upon whether the indemnitor was a party to the original action and whether the indemnitor was under a duty to defend the original action. In Crawford v. Pope & Talbot, Inc., 206 F.2d 784 (3rd Cir., 1953) the Court stated:

"If the indemnitor was not a party to the original action against the indemnitee, and where he was under no duty to participate in the defense of the original action, or being under such a duty, he was not given reasonable notice of the action and requested to defend, neither the indemnitor nor the indemnitee is bound in subsequent litigation between them by findings made in the action." (206 F.2d 795.)

It is clear that neither Northern Metal nor Maritime had a contractual duty to defend the Rodack suit against U. S. Lines under any written contract of insurance or indemnification. There being no duty to defend the original action, the rule of Crawford v. Pope & Talbot, *supra,* clearly holds that none of the parties to this subsequent suit are bound by the findings of fact in the Rodack v. U. S. Lines suit.

Thus it is incumbent upon the plaintiff in this suit to prove its actual liability to Rodack and the defendants' responsibility for Rodack's injuries.

B. *Liability of Northern Metal.*

█ The right of indemnity of the shipowner against the stevedore, Northern Metal, is premised on the stevedore's breach of its warranty of workmanlike service. The negligence of the plaintiff will not necessarily bar its right to indemnification. Ryan Stevedoring Co. v. Pan Atlantic SS, 350 U.S. 124, 134–135,

---

1. The findings of fact by way of answer to special interrogatories in the Rodack v. U. S. Lines case were:

"1. Was a direct and substantial cause of the accident the presence of the tallow on the tank top in the ship's hold?
"Answer: Yes.

"2. Was a direct and substantial cause of the accident the presence of a slippery substance other than tallow on the tank top, in the ship's hold?
"Answer: No.

"3. Did the substance on the tank top constitute a slippery condition which rendered the working area less than reasonably safe for men working in the hold?
"Answer: Yes.

"4. Could the aforesaid slippery condition have been detected by reasonable inspection on the morning of the accident before the plaintiff fell?
"Answer: Yes.

"5. Was the plaintiff contributorily negligent, and was such negligence a substantial factor in causing his injury?
"Answer: No."

76 S.Ct. 232, 258, 100 L.Ed. 133 (1956). Later cases have emphasized that the stevedore's liability to the shipowner for the breach of its warranty of workmanlike service is based on the policy that the stevedore is in a superior position to detect the existence of a particular dangerous condition and to prevent the injury. Italia Soc. Per Azioni v. Oregon Stevedoring Co., 376 U.S. 315, 84 S.Ct. 748, 11 L.Ed.2d 732 (1964). (There the stevedore was held liable to the ship for damages suffered by the ship when one of the stevedore's employees recovered for his injuries caused by a latent defect in equipment supplied by the stevedore.)

■ In the instant matter no such policy reason exists for holding the stevedore ultimately responsible for Rodack's injuries because the stevedore in fact did not breach his warranty of workmanlike service. As between the stevedore and the ship, the latter is in the better position to clean its own ship and discover any latent conditions caused by the inadequate cleaning by the shipcleaners. The condition causing Rodack's injuries, tallow broom-swept with dirt and debris, was not discoverable by reasonable visual inspection. (N.T., 113.) Furthermore, in this case the stevedore had no type of information, such as knowledge that tallow had been loaded into certain holds previously, which would have caused it to do more than the type of visual inspection made of the tank top before commencing work. In addition, the failure of Northern Metal to discover the greasy spot of tallow did not bring into play the unseaworthiness of the vessel which lead to Rodack's injuries. Cf. Crumday v. Joachim Hendrik Fisser, et al., 358 U.S. 423, 79 S.Ct. 445, 3 L.Ed.2d 413 (1959).

Northern Metal, however, is not entitled to a directed verdict since I have been forced as the fact finder to balance the facts and evaluate those facts under the applicable standards. As a matter of law it cannot be said that Northern Metal is not liable since there was conflict in the testimony which I was forced to resolve as the fact finder. But under the facts of this case, Northern Metal is not liable to U. S. Lines since Northern Metal did not breach its warranty.

### C. *Liability of Maritime.*

■ Ultimate liability for Rodack's injuries lies, however, on the shipcleaners, Maritime, because the breach of its contract to clean the ship on July 17 and 23, 1961 left a latent dangerous condition, broom-swept tallow, which rendered the ship unseaworthy on the morning of July 25, 1961. This unseaworthy condition caused Rodack's injuries. The evidence is that Maritime contracted to clean the ship, including the removing of tallow from the tank tops, and that Maritime failed to remove the tallow. (N.T., 105). There is no basis for holding, as Maritime contends, that as a matter of law the ship accepted the cleaning job with knowledge of its incompleteness, and thus has no basis for objection to the negligent performance of the contract. Lecklikner v. Transandina Compania Naviera, 390 F. 2d 179, 181 (C.A. 3, 1968), relied on by the defendant, did not hold as the defendant contends, that as a matter of law a shipowner cannot recover for defects in contracted for services when the shipowner has accepted those services with defects. That case held only that a jury may find from the testimony presented that certain equipment was acceptable to the ship for use by the stevedores. There is thus no basis for granting Maritime's motion for a directed verdict.

### D. *Recovery of Related Expense in Defense of Rodack Suit.*

■ At no time during the trial of this case did plaintiff have *any* evidence admitted as to the actual legal and other related expenses incurred in the defense of the prior case of Rodack v. United States Lines. In his brief filed some weeks *after* the completion of the entire trial, plaintiff states that "it would be premature to prove defense costs during trial on the merits of a separate indemnity suit tried to the court without a

jury." (p. 22.) During the presentation of his case in chief, plaintiff never made a motion on the record pursuant to Rule 42(b) of the Federal Rules of Civil Procedure to sever the counsel fee and defense costs issue. (See N.T., 8, 9, 168, 169.) In fact, plaintiff never even intimated on the record any desire of a partial severance of issues until after (1) he had rested his case in chief, and until (2) Maritime Shipcleaning and Maintenance Company had rested their case without putting on any evidence with the explicit statement by Maritime's counsel that:

"MR. GRIFFIN: Your Honor, at this stage having reviewed my position and believing, as I do, that there hasn't been a case made out against Maritime I am not going to delay the proceeding any further. I am simply going to rest at this point, Sir.

*Mr. Kildare has not seen fit to put in any counsel fee evidence. So, we haven't had a dispute about that,* and I would just as soon not take the Court's time with other disputes that are inherent here but I think unnecessary." (N.T., 167.) (Emphasis added.)

Without any offer of evidence as to the amount of expenses incurred in defense of the *Rodack* suit plaintiff is not entitled to a judgment for these expenses.

## IV.

## CONCLUSIONS OF LAW

1. Northern Metal did not breach its warranty of workmanlike service. Northern Metal Co. is not liable to U. S. Lines.

2. Maritime breached its contract to clean the SS PIONEER COVE. The breach of the contract was the sole cause of Rodack's injuries. This breach caused the shipowner's losses which entitles the ship to recover against Maritime by way of indemnification.

3. The findings of fact in the case of Rodack v. U. S. Lines are not binding on the parties to this suit.

4. Judgment may be entered in favor of the plaintiff against Maritime in the amount of $35,000 with interest at six percent (6%) from September 28, 1966.