**HUMBLE OIL & REFINING COMPANY**

v.

**PHILADELPHIA SHIP MAINTENANCE CO., Inc., Appellant.**

No. 18941.

United States Court of Appeals,
Third Circuit.

Argued March 30, 1971.

Decided June 3, 1971.

Francis E. Marshall, Marshall, Dennehey & Warner, P. A., Philadelphia, Pa., (Edward R. Murphy, Philadelphia, Pa., on the brief), for appellant.

James F. Young, Krusen, Evans & Byrne, Philadelphia, Pa. (Raymond T. Letulle, Philadelphia, Pa., on the brief), for appellee.

Before HASTIE, Chief Judge, and SEITZ and ALDISERT, Circuit Judges.

## OPINION OF THE COURT

ALDISERT, Circuit Judge.

This appeal presents the tridimensional conflict created when a longshoreman seeks redress from the shipowner for injuries sustained in the course of his employment, and the shipowner, in turn, looks to the stevedore for indemnification. We must examine the scope of a stevedore's duty to defend and indemnify the shipowner, and determine whether a refusal to accept a tender of defense collaterally estops the stevedore from litigating those facts resolved in the longshoreman's action.

Under contract to load stores aboard appellee's vessel, appellant sent four men, including a foreman, aboard the SS ESSO LIMA on September 25, 1964. Among the cargo to be stowed were several machinery crates, some weighing approximately 350 pounds. The foreman requested and was denied use of the ship's boom to assist in the stowage. He directed his men to proceed loading the crates by hand. In order to load the crates through the pipe rail, an opening in the deck railing, the men removed the lower of two protective chains. The upper chain was rusted and frozen and could not be disconnected. One crate lodged against that chain. While attempting to free the crate and slide it up through the passage, Marion Domeracki, one of the longshoremen, permanently injured his back. He brought suit against the shipowner on April 12, 1965, for his damages.[1] On March 3, 1966, the shipowner instituted this action in admiralty, seeking indemnification for the damages awarded in the *Domeracki* action. The district court, 312 F.Supp. 380, granted the shipowner's motion for summary judgment and the stevedore appealed.

The grant of summary judgment was predicated on determinations that the seven special interrogatories posed to the jury in *Domeracki*[2] resolved all genuine issues of material fact, and that the conclusion was ineluctable as a matter of law that any unseaworthiness or negligence attributed by that jury to the shipowner "were conditions created or

---

1. The jury returned damages, based on findings of unseaworthiness and negligence, of $270,982. We affirmed the judgment entered on the verdict. Domeracki v. Humble Oil & Refining Co., 443 F.2d 1245 (3 Cir., No. 18,886, 1971).

2. 1. Did defendant shipowner breach the absolute duty to furnish a safe and seaworthy vessel

 (a) by furnishing defective equipment?
 Yes X No _____

 (b) by failing to furnish adequate equipment?
 Yes X No _____

 (c) by permitting an improper method of operation in the loading of stores?
 Yes X No _____

 2. If you have answered "Yes" to any of the parts of Interrogatory No. 1, was plaintiff's injury proximately caused by defendant's breach of duty set forth in
 1(a) ? Yes X No _____
 1(b) ? Yes X No _____
 1(c) ? Yes X No _____

 3. Was defendant shipowner negligent in failing to provide a reasonably safe place for plaintiff to work?
 Yes X No _____

 4. If your answer to Interrogatory No. 3 is "Yes," was plaintiff's injury proximately caused by that negligence?
 Yes X No _____

 5. In what amount do you assess plaintiff's damages?
 $270,982.00

 6. Was plaintiff guilty of contributory negligence?
 Yes _____ No X _____

 7. If your answer to Interrogatory No. 6 is "Yes," to what extent (stated in percentage) did plaintiff's negligence contribute to his injury?
 —%

brought into play by Stevedore's breach of [implied] warranty." The district court found that "[o]n these facts Stevedore must indemnify Shipowner. Italia Societa per Azioni di Navagazione v. Oregon Stevedoring Co., [376 U.S. 315, 84 S.Ct. 748, 11 L.Ed.2d 732 (1964)]; Crumady v. The Joachim Fisser, [358 U.S. 423, 79 S.Ct. 445, 3 L.Ed. 2d 413 (1959)]; Gilchrist v. Mitsui Sempaku K. K., [405 F.2d 763 (3 Cir. 1968)]; Dunn v. Ove Skou Rederi A/S, [45 F.R.D. 18 (E.D.Pa.1968)]." Humble Oil v. Philadelphia Ship, 312 F.Supp. 380, 386 (E.D.Pa.1970). It thus becomes necessary to assess the nature of the warranty a stevedore impliedly grants to a shipowner.

 Though a shipowner's liability to a longshoreman injured on his vessel is virtually absolute,[3] the liability of the stevedore for indemnification is not coextensively comprehensive. Indeed, prior to 1956 a careless stevedore who may have "created" a condition of unseaworthiness, but who was not by express terms contractually bound to indemnify, was not required to make a contribution to judgments paid by a shipowner to an injured longshoreman. Halcyon Lines v. Haenn Ship Ceiling & Refitting Corp., 342 U.S. 282, 72 S.Ct. 277, 96 L.Ed. 318 (1952); Pope & Talbot, Inc. v. Hawn, 346 U.S. 406, 74 S.Ct. 202, 98 L.Ed. 143 (1953). *See also* Baer, Admiralty Law of the Supreme Court, § 8.1 at 193–95 (1969).

A new course was charted in Ryan Stevedoring v. Pan-Atlantic S.S. Corp., 350 U.S. 124, 76 S.Ct. 232, 100 L.Ed. 133 (1956), in which the Court found nothing to preclude the stevedore from contracting with the shipowner to indemnify it for any claims upon which injured longshoremen might recover against the shipowner or the vessel *in rem.* Indeed, Mr. Justice Burton found a warranty implicit in the stevedoring contract:

> Competency and safety of stowage are inescapable elements of the service undertaken. This obligation is not a quasi-contractual obligation implied in law or arising out of a noncontractual relationship. It is of the essence of petitioner's stevedoring contract. It is petitioner's warranty of workmanlike service that is comparable to a manufacturer's warranty of the soundness of its manufactured product. The shipowner's action is not changed from one for a breach of contract to one for a tort simply because recovery may turn upon the standard of the performance of petitioner's stevedoring service. *Id.* at 133–134, 76 S.Ct. at 237.[4]

3. In Seas Shipping Co. v. Sieracki, 328 U.S. 85, 94–95, 66 S.Ct. 872, 877, 90 L.Ed. 1099 (1946), the Supreme Court defined unseaworthiness as "a species of liability without fault, * * * neither limited by conceptions of negligence nor contractual in character. * * * It is a form of absolute duty owing to all within the range of its humanitarian policy." Liability without fault was extended to protect repairmen working on the ship in Pope and Talbot v. Hawn, 346 U.S. 406, 74 S.Ct. 202, 98 L.Ed. 143 (1953); *see* 68 Harv.L.Rev. 160 (1954); and even for injuries caused by defective equipment brought on the ship by the stevedore, Alaska S. S. Co. v. Petterson, 347 U.S. 396, 74 S.Ct. 601, 98 L.Ed.2d 798 (1954); Mitchell v. Trawler Racer, Inc., 362 U.S. 539, 549, 80 S.Ct. 926, 4 L.Ed.2d 941 (1960) and cases cited therein; *Williams* v. Ocean Transport Co., 425 F.2d 1183, 1186 (3 Cir. 1970); Chagois v. Lykes Bros. Steamship Co., 432 F.2d 388, 391 (5 Cir. 1970). Cf. Usner v. Luckenbach Overseas Corp., 400 U.S. 494, 91 S.Ct. 514, 27 L.Ed.2d 562 (1971).

4. *Ryan,* in which the negligence was almost exclusively attributed to the stevedore, was initially affirmed by an equally divided court. After reargument, it was again affirmed, 5–4. Mr. Justice Black dissented, arguing that "the employer is actually mulcted in damages because its employee successfully prosecuted a third party action." 350 U.S. at 141, 76 S.Ct. at 237. He concluded:
> And while this will be accomplished under the name of "contract," it will really be achieved because the Court has announced as an absolute principle of law that without regard to whether a stevedoring company *intends* to agree to indemnify, it has so agreed if it agrees to do a job. Thus by indirection rights of

■ In Weyerhaeuser S.S. Co. v. Nacirema Operating Co., 355 U.S. 563, 78 S.Ct. 438, 2 L.Ed.2d 491 (1958), the Supreme Court, again faced with facts indicating that the stevedore was substantially responsible for a longshoreman's injuries, reaffirmed the shipowner's right to indemnification created in *Ryan*, but not without reservation: "If [the stevedore] rendered a substandard performance which led to foreseeable liability of [the shipowner], the latter was entitled to indemnity *absent conduct on its part sufficient to preclude recovery.*" *Id.* at 567, 78 S.Ct. at 441 (emphasis supplied). Without delineating what conduct would have barred the success of the shipowner's indemnity claim, *Weyerhaeuser* nonetheless explicitly rejected tests traditionally utilized to evaluate negligence claims: "[I]n the area of contractual indemnity an application of the theories of 'active' or 'passive' as well as 'primary' or 'secondary' negligence is inappropriate. Ryan Stevedoring Co. v. Pan-Atlantic S.S. Co., *supra,* 350 U.S. at 132–133, 76 S.Ct. at pages 236–237." Id. at 569,[5] 78 S.Ct. at 442.

In Italia Societa per Azioni di Navigazione v. Oregon Stevedoring, 376 U.S. 315, 84 S.Ct. 748, 11 L.Ed.2d 732 (1964), indemnity was held proper even though the Court explicitly conceded that the stevedore had not been negligent. Mr. Justice White emphasized that a "tort standard of negligence [is]

inapplicable to the stevedore's liability under its warranty of workmanlike service." *Id.* at 323,[6] 84 S.Ct. at 753.

■■ In short, indemnification may be required under a breach of warranty theory even when the stevedore is not negligent, *Italia; supra,* or when the shipowner's own negligence is the primary cause of the longshoreman's injury, Gilchrist v. Mitsui Sempaku K.K. *supra.* It appears from the cases that any unreasonable action by a stevedore which activates or exacerbates a latent or manifest condition of unseaworthiness will establish the shipowner's right to indemnification. Crumady v. J. H. Fisser, *supra;* Williams v. Ocean Transport Lines, Inc., *supra.*

■ The inapplicability of negligence principles, however, is a two-edged sword. A specific finding of negligence does not necessarily establish a breach of warranty, and indemnity may be refused. Hagans v. Farell Lines, Inc., 237 F.2d 477, 480 (3 Cir. 1956); Reddick v. McAllister Lighterage Line, 258 F.2d 297, 300 (2 Cir. 1958). As stated in Waterman Steamship Corp. v. David, 353 F.2d 660, 662 (5 Cir. 1965): "If a vessel's unseaworthiness prevents the stevedore's workmanlike performance, that is 'conduct' on the part of the shipowner 'sufficient to preclude recovery' and to excuse even a negligent breach by the stevedore."[7]

---

longshoremen and their employers recognized by this Court in *Sieracki, Halcyon,* and *Pope & Talbot* are taken away. In effect the *Sieracki* case is rejected. *Id.* 350 U.S. at 147, 76 S.Ct. at 244. *See* dissent of Judge Friendly in Reid v. Quebec Paper Sales, 340 F.2d 34, 39 (2 Cir. 1965).

5. Though the right to indemnity is thus clearly contractual, the stevedore's warranty need not emanate from a direct agreement with the shipowner. In Crumady v. The Joachim Hendrik Fisser, 358 U.S. 423, 79 S.Ct. 445, 3 L.Ed.2d 413 (1959), an *in rem* action against the vessel, the ship was deemed to be a third party beneficiary to a contract between the vessel's charterer and the stevedore, and thus could seek indemnity from the long-

shoreman's claim. Liability was also upheld in Waterman S. S. Co. v. Dugan & McNamara Inc., 364 U.S. 421, 81 S.Ct. 200, 5 L.Ed.2d 169 (1960), in which the stevedore had contracted with the consignee of the cargo.

6. Critical to the Court's decision was the finding that the stevedore was "the party best situated to adopt preventive measures [inspections, tests, and retirement schedules for its equipment] and thereby to reduce the likelihood of injury." 376 U.S. at 324, 84 S.Ct. at 754.

7. An attempt to codify the obligations owed by the shipowner appears in Comment, "The Ryan Doctrine: Present Stature and Future Development," 37 Tul.L.Rev. 786 (1963), an excerpt from which is foot-

732

■■ From these cases emerges an admittedly abstruse test for indemnity which is perhaps better articulated in terms of shifting burdens than in precise standards of conduct: once a condition of unseaworthiness is established in a direct action against the shipowner, the burden falls on the owner to demonstrate (a) that the condition of unseaworthiness was caused or activated by the stevedore, and (b) that such action by the stevedore constituted a breach of his implied warranty of workmanlike service.[8] The burden then shifts to the stevedore to demonstrate that some action or inaction by the shipowner calls the *Weyerhaeuser* corollary into play, thus precluding any *Ryan* right of indemnity.

■ The extent to which the *Weyerhaeuser* corollary limits the *Ryan* doctrine is a matter on which courts differ.[9] This court has recently reaffirmed its substantial emphasis on the *Ryan* rule:

> The right of indemnification is not defeated by the shipowner's own negligence. Weyerhaeuser S.S. Co. v. Nacirema Operating Co., supra, and it does not depend upon any privity of contract between the shipowner and the warrantor of workmanlike service. * * * In short, the vessel is entitled to indemnity from whatever third

party causes the condition of unseaworthiness producing the injury.

Williams v. Ocean Transport Lines, Inc., *supra*, 425 F.2d at 1186. See also Gilchrist v. Mitsui Sempaku K.K., *supra*. But even in *Williams*, a critical factual determination was a condition precedent to liability:

> There was no dispute that use of the Port Commission's defective crane was relied upon as creating the condition of unseaworthiness. The Port Commission, therefore, owed Ocean Transport a clear duty to indemnify against Williams' unseaworthiness claim. It acknowledged that duty in writing and undertook the defense of the action on Ocean Transport's behalf.

Absent such express acknowledgment, the applicability of the *Weyerhaeuser* corollary is in each case manifestly a jury question.

■ The reasonableness of the stevedore's actions must not be evaluated in isolation. Whether the shipowner has created conditions which so impede the stevedore's performance that his breach may be excused is a weighing process, Waterman Steamship Corp. v. David, *supra*, peculiarly within the province of the factfinder. Atlantic & Gulf Stevedores, Inc. v. Ellerman Lines, 369

---

noted by the Court in Waterman Steamship Corp. v. David, 353 F.2d at 665 n. 7.

Though the Supreme Court has not further defined the standard of conduct which will invoke the *Weyerhaeuser* corollary, it has added a new dimension to the liability issue. In Federal Marine Terminals, Inc. v. Burnside Shipping Co., 394 U.S. 404, 89 S.Ct. 1144, 22 L.Ed.2d 371 (1969), the Court recognized that the shipowner owes a duty of due care to the stevedore which, when breached, may give rise to an action in tort by the stevedore against the shipowner.

8. It is vital to recognize that the stevedore's breach must be independently demonstrated. As noted most recently by the Fifth Circuit, a stevedore, through his employee, may in fact activate the unseaworthy condition, but nonetheless still not violate his warranty of workmanlike per-

formance. In Delaneuville v. Simonsen, 437 F.2d 597, 601 (5 Cir. 1971), the court recognized that "[i]t is true that once a stevedore is placed on notice that a defective condition exists aboard ship, it must take immediate, affirmative action to correct it, and to make the ship safe for its intended use." Nonetheless, the court denied indemnity, explicitly finding no breach of warranty: "Indemnity was denied, not because the conduct of Shipowner precluded enforcement, but rather because Stevedore did not breach its [warranty of workmanlike performance]. This result is faithful to [*Weyerhaeuser, supra*]." *Id.* 437 F.2d at 602.

9. *Compare, e. g.,* Waterman Steamship Corp. v. David, *supra*, with Guidry v. Texaco, 430 F.2d 781 (5 Cir. 1970) and Grigsby v. Coastal Marine Service, 412 F.2d 1011 (5 Cir. 1970).

U.S. 355, 82 S.Ct. 780, 7 L.Ed.2d 792 (1962). And if the jury concludes that the stevedore is free from all responsibility for a longshoreman's injury, no indemnity may be found as a matter of law. International Terminal Operating Co. v. N. V. Nederl. Amerik Stoomv. Maats., 393 U.S. 74, 75, 89 S.Ct. 53, 21 L.Ed.2d 58 (1968).

■■■ The answers of the *Domeracki* jury to the special interrogatories admit of several interpretations. We must reject any interpretation which renders the answers inconsistent. Gallick v. Baltimore & Ohio R. Co., 372 U.S. 108, 119, 82 S.Ct. 659, 9 L.Ed.2d (1963); Atlantic & Gulf v. Ellerman, *supra*, at 364; Waterman Steamship Corp. v. David, *supra*, 353 F.2d at 665. It appears clear that the jury found (1) that the vessel was unseaworthy by virtue of the frozen chain and the failure to provide use of the boom to the stevedore; and (2) when the stevedore decided to load the crates through the guard rail, it "activated" this unseaworthiness, thus transforming a potential danger into the proximate cause of a legally cognizable injury.

■■■ Even if we were to accept these findings as conclusive, however, the critical question would still be whether the shipowner's breach of his absolute duty to furnish a safe and seaworthy vessel so prevented or hindered the stevedore from completing its performance that the subsequent breach of warranty by the stevedore may be deemed excused. This question, appellant urges, the jury did not answer. We agree. Indeed, the question was not, and could not have been, submitted to that jury. The stevedore was not a party to the *Domeracki* action and the jury was cautioned that only the shipowner's liability was before

them.[10] As the Second Circuit has noted:

> [U]nless the jury knew that it was imposing financial liability upon [stevedore] or relieving it of such liability, or was holding [shipowner] solely liable for plaintiff's injuries, its answers to the active-passive questions were without legal significance.

McNamara v. Weichsel Dampschiffahrts AG Kiel, 293 F.2d 900, 903 (2 Cir. 1961). This case must, therefore, be remanded in order that the relative culpability of the stevedore and shipowner be weighed in apposition.

But the question whether the *Domeracki* findings are binding upon the parties is not rendered academic. If bound by the jury's answers, the stevedore's burden is manifestly more difficult. If stowage is indeed "the clearest example of a detail within the special competence and peculiar responsibility of the master stevedore contractor," Reed v. Bank Lines, 285 F.Supp. 808, 811 (E.D.La. 1966), and the stevedore is estopped from denying its improper handling of the cargo, its ability to effect an application of the *Weyerhaeuser* corollary will be severely hampered. On the other hand, if the stevedore is not bound by these findings it will be free to challenge the allegation that it breached its warranty. Accordingly, we turn to the question of collateral estoppel.

## II.

The parties approached the defense of the *Domeracki* action in a fashion reminiscent of Alphonse and Gaston. The shipowner, once named as defendant, formally tendered the defense to the stevedore. The stevedore, acknowledging the notice and tender, declined the offer. The stevedore urges that the

---

10. The court instructed the jury:
You are here to try the case of Marion Domeracki against the Humble Oil and Refining Company. That is the only case you are here to try. Whatever reference may have been made to other litigation, just disregard it. This is the case you are here to try, you are sworn

to try and this is the only one I want you to consider.
Later the court added:
Members of the jury, you are trying one law suit. You are not here to determine whether the ship has any rights against anybody else.

shipowner should have impleaded the stevedore. The shipowner responds that the stevedore could have moved for consolidation after the commencement of this action.[11] The existence *vel non* of a duty to defend is, of course, critical:

If the indemnitor was not the party to the original action against the indemnitee, and where he was under no duty to participate in the defense of the original action, * * * neither the indemnitor nor the indemnitee is bound in subsequent litigation between them by findings made in the action. Where, on the other hand, * * * the indemnitor, with notice of the action and of the indemnitee's request that he defend it, does not participate in the defense but leaves it to the reasonable efforts of the indemnitee, then in subsequent litigation between them both indemnitor and indemnitee are bound by the findings necessary to the judgment in the action. Crawford v. Pope & Talbot, Inc., 206 F.2d 784, 795 (3 Cir. 1953).

As in *Crawford*, the parties here had no contractual agreement regarding defense of possible suits by injured longshoremen. The district court found that the duty to defend nonetheless arose because

it was, or should have been, readily apparent to Stevedore that the claims of unseaworthiness and negligence against Shipowner were actually founded upon the manner in which the loading operation was conducted and the equipment used to perform it, matters which were Stevedore's responsibility. Humble Oil v. Philadelphia, *supra*, 312 F.Supp. at 384.

If the facts actually or constructively known to the indemnitor at the time

defense of the action is proferred to it, demonstrate that liability will eventually fall on indemnitor, the indemnitor is under a duty to defend. Siebrand v. Eyerly Aircraft Co., 196 F. Supp. 936 (D.Or.1961); Nordeutscher Lloyd, Brennan v. Brady-Hamilton Stevedore Co., *supra* [195 F.Supp. 680 (D.Or.1961)]. *Id.* at 383.

We do not quarrel so much with the rule enunciated in the cases relied upon by the district court so much as we perceive extreme difficulty in its practical application. The rule calls for an exquisite ability to predict, at a pretrial stage, the eventual outcome of the indemnity action. For the rule to apply, the prospective indemnitor must be in actual or constructive possession of facts which unerringly point to liability. If nothing else, even a cursory perusal of the cases discussed herein will indicate that the duty to indemnify is an evanescent and often desultory doctrine which has divided courts hearing these actions at every level of the federal bench.[12] Without reaching the question of the propriety of this rule,[13] we conclude that at the time tender was made to the stevedore the facts were not as one-sided as they were in *Williams, supra,* where the sole cause of the unseaworthiness condition was conceded to be the Port Commission's crane. Several possible exculpatory causes of the unseaworthy condition may have seemed plausible at the pre-trial stages of *Domeracki*: the denial of use of the ship's boom; the rusted, frozen chain; an oil slick on the deck. Negative answers to interrogatories 1(c) and 2(c), *supra*, note 2 were also possible. Under such circumstances, even the Oregon rule recognizes that a

---

11. As the district court acknowledged, this procedure has received the imprimatur of this court. See Blake v. Farrell Lines, 417 F.2d 264 (3 Cir. 1969); Close v. Calmar Steamship Corp., 44 F.R.D. 398 (E. D.Pa.1968); Turner v. Transportation Maritima Mexicana S. A., 44 F.R.D. 412 (E.D.Pa.1968).

12. See *supra* note 4; see also Baer, *supra*, § 8–1, et seq.

13. We need not discuss appellant's contention that these Oregon cases, relied upon by the court below, in fact support the positions advanced on this appeal. In the view we take of this case, analysis of these two cases is unnecessary.

stevedore ought not be bound to such an election:

> [I]f the primary claim against the indemnitee is premised on a charge on which the indemnitor would be liable, and also on a separate charge on which the indemnitee was liable, the judgment based on both claims would not, as a matter of law, be conclusive against the indemnitor. Nordeutscher Lloyd, Brennan v. Brady-Hamilton, *supra,* 195 F.Supp. at 684.

Accordingly, even assuming the vitality of the Oregon rule, we are not persuaded that at the time of the tender of defense the facts demonstrated "that liability [would] eventually fall upon the indemnitor," thereby placing him under a duty to defend.

Furthermore, we entertain serious reservations concerning the applicability of the "vouching-in" process in this case.[14] The warranty impliedly granted by the stevedore to the shipowner has been likened to a manufacturer's warranty of fitness. *Ryan, supra,* 350 U.S. at 133–34. We find the rationale rejecting application of the vouching-in principle in a manufacturer's warranty case to be appropriate here. In Barber-Greene Co. v. Bruning Co., 357 F.2d 31, 34 (8 Cir. 1966), the court recognized that the *res judicata* principle cannot be applied unless the warranty by the voucher to the original complainant and that granted by the vouchee are identical:

These general principles [vouching-in] are not really at issue in the present appeal. What is at issue is the application * * * of another rule, subordinate but nevertheless valid and established, namely, that the liability of the alleged indemnitor—except in those instances where the successive warranties or other bases for responsibility are identical—remains to be proved in the indemnity action and is not necessarily concluded by the result of the injured person's suit against the one claiming to be an indemnitee.

Similarly it is precisely because the stevedore, who is not an insurer against the shipowner's loss, warrants something less than does the shipowner vis á vis the longshoreman, that *Domeracki* cannot estop the stevedore from relitigating the findings therein. The shipowner may still impose liability on the stevedore, of course, "[b]ut its attempt to do so in the [indemnity] suit must go beyond mere proof of the [*Domeracki*] results." *Barber-Greene, supra,* 357 F.2d at 36.

It is no answer, in support of imposing this duty on the stevedore, to stress the judicial economy of the "vouching-in" process. If this be our concern, the most expeditious procedure would be impleader, since both actions would then be simultaneously heard. See 3 Moore's Federal Practice, § 14.02[1], at 432.[15]

Moreover, this court's decision in *Crawford, supra,* mandates no different result.[16] The *Crawford* opinion deals at

---

14. "Vouching-in" is a common-law device by which a defendant notifies another: (a) of the pendency of the suit against him; (b) that if liability is found, the defendant will look to the vouchee for indemnity; (c) that the notice constitutes a formal tender of the right to defend the action; and (d) that if the vouchee refuses to defend, it will be bound in any subsequent litigation between them to the factual determinations necessary to the original judgment. Though largely supplanted by modern third-party practice, vouching-in remains marginally viable under the federal rules. Not proscribed by the unified admiralty and civil rules, the practice has been upheld in a few federal cases. Hessler v. Hillwood Mfg. Co., 302 F.2d 61 (6 Cir. 1962); The West Indian Co. v. SS Empress of Canada, 277 F.Supp. 1 (S.D.N.Y.1967); Frank R. Jelleff, Inc. v. Pollack Bros., 171 F.Supp. 467 (N.D. Ind.1957).

15. Professor Moore would restrict the use of the vouching-in process to those cases in which process on the indemnitor cannot be obtained. *Id.* at 432, note 5. This procedure has been upheld in Hessler v. Hillwood, *supra.*

16. U. S. Lines v. Maritime Shipcleaning, 317 F.Supp. 639, 643 (E.D.Pa.1970):
It is clear that [stevedore] had [no] contractual duty to defend the [long-

great length with the interrelationship of indemnity and collateral estoppel:

> The general rule is clear. A person not a party to a case is not bound by the findings of that case in subsequent litigation involving the same fact situation. Where the subsequent litigation involves one of the same parties to the original case, even that party is not bound since his adversary, the new party, is not.[17] 206 F. 2d at 794.

After carving out the aforementioned exception in the case of an indemnitor, Judge Biggs rejected the notion that the potential indemnitor, a shipcleaning firm, could be bound by the prior findings adverse to the shipowner. As here, there was no question of notice. Impleader was attempted by the shipowner and rejected by the district court. The shipcleaner took the position that it could not be held to a claim for indemnity. The court agreed:

> Although this view was mistaken as to the indemnity claim, the court below sustained it and prior to the trial dismissed the petition to implead Nation-

al. National, therefore, as far as it could know, was under no duty to participate in the defense of the actions against Pope and Talbot. We conclude that National cannot be bound by any of the findings made in the [prior] litigation between [longshoremen] and [shipowner]. *Id.*, at 796.

Similarly, the stevedore here had nothing but the shipowner's tender on which to conclude that it was duty-bound to assume the defense. Indeed, the shipowner's failure to implead the stevedore after it refused to defend the original action could only serve to obfuscate any obligation owed by the stevedore.[18]

We hold, therefore, that the findings in *Domeracki* cannot be binding upon the stevedore. The shipowner must affirmatively demonstrate that the stevedore breached its warranty of workmanlike performance, and that the breach occasioned Domeracki's injuries. Only then will indemnity be sanctioned, "absent conduct on [the shipowner's] part sufficient to preclude recovery," *Weyerhaeuser, supra.*

> shoreman's] suit against [shipowner] under any written contract of insurance or indemnification. There being no duty to defend the original action, the rule of Crawford v. Pope & Talbot, *supra,* clearly holds that none of the parties to this subsequent suit are bound by the findings of fact in the [longshoreman's] suit. Thus it is incumbent upon the [shipowner] plaintiff in this suit to prove its actual liability to [longshoreman] and the [stevedore's] responsibility for the [longshoreman's] injuries.

17. We need not here be concerned with questions of mutuality of estoppel, resolved in Bruszewski v. United States, 181 F. 2d 419 (3 Cir. 1950), cert. denied 340 U.S. 865, 71 S.Ct. 87, 95 L.Ed. 632 (1950), which arose in a different context. As Chief Judge Hastie, who authored the *Bruszewski* opinion, noted in his dissent in Nickerson v. Kutschera, 419 F.2d 983, 985 (3 Cir. 1969), the question of mutuality arises in the context of denying a plaintiff the opportunity to relitigate issues on which he has previously been denied relief:

> It was our view in *Bruszewski* * * * that except for considerations of unfairness shown in a particular case, a party who as plaintiff had asserted a claim and had lost should not be heard again on the merits of that claim even in a second suit which he thereafter has instituted against a stranger to the original claim.

18. Though the longshoreman's complaint did not specifically invoke the admiralty jurisdiction of the court, the allegation of negligence was predicated on the unseaworthiness of the vessel. Whether this sufficiently conformed to the dictates of Rule 9(h), F.R.C.P., thus permitting impleader under Rule 14(c), impleader would in any event have been proper under Rule 14(a). Since the stevedore would have then had full opportunity to litigate those facts critical to its own liability, it would have been bound by the factual findings in *Domeracki.* See 3 Moore's Federal Practice § 14.13, note 4.

The judgment will be reversed and the cause remanded for proceedings consistent with this opinion. Costs to abide the event.[19]

19. Appellant has argued that, irrespective of our disposition of this appeal, appellee is not entitled to the costs of defending the original action. On this point the law in our circuit is clear: Gilchrist v. Mitsui, *supra*, 405 F.2d at 769, quoting Ellerman Lines v. Atlantic & Gulf, 339 F.2d 673, 674:

> If conduct of [the stevedoring company] in violation of its warranty to [the shipowner] was the *sole* responsible cause of [the longshoreman's] injury, as the libel alleges, the expense to which [the shipowner] is subjected in defending [the longshoreman's] suit against it to recover for that injury is an element of damage caused by the [stevedore company's] breach of warranty, even if [the shipowner] succeeds in defeating [the longshoreman's] claim. (Citations omitted and emphasis added.) (Emphasis and brackets by the court.) *Accord:* Strachan Shipping Co. v. Koninklyke Nedr. S. M., 324 F.2d 746 (5 Cir. 1963); see Baer, Op. Cit. § 8–4, at 216–17.

The parties here agree that this case is controlling, but interpret differently the import of the *Domeracki* findings. Since they are not binding on this action, costs will be borne by the appellee unless the court below determines, on remand, that appellant was *solely* responsible for Domeracki's injuries.